J. P. MOORE, *as Administrator, etc.,* V. NAH-
CON-BE *et al.*

No. 14,194.    (83 Pac. 400.)

SYLLABUS BY THE COURT.

1. PRACTICE, SUPREME COURT—*Order of Revivor—Regularity Presumed.* In the absence of any showing to the contrary, an order of revivor made by the district court will be presumed by this court to have been properly and legally made.

2. INDIANS—*Allotment of Lands—Citizenship.* When lands composing an Indian reservation have been allotted and patented in severalty among the members of the band or tribe of Indians occupying such lands, each and every allottee becomes a citizen of the state wherein such reservation is located, and subject to the laws thereof.

3. —————— *Tribal Customs—Marriage—Divorce.* A marriage or divorce between members of an Indian tribe, valid under the rules and customs of such tribe, will be recognized and enforced by the courts of this state; but a marriage or divorce between Indians after they become citizens of this state must be in compliance with the laws of this state.

Error from Jackson district court; MARSHALL GEPHART, judge. Opinion filed November 11, 1905. Modified.

*Crane & Woodburn Bros.,* for plaintiff in error.
*J. A. Rokes,* for defendants in error.

The opinion of the court was delivered by

GRAVES, J.: This suit was commenced in the district court of Jackson county on May 2, 1903, to partition property belonging to the estate of Shough-ne-gish-go-quah, deceased. The plaintiff, Wa-me-go, and the defendant, Nah-con-be, *alias* Henry Clay Bear, each claimed to have been the legal husband of the deceased at the time of her death, and therefore entitled to one-half of her estate. This claim constitutes the principal question in this case. To determine this dispute it is necessary to consider the following facts: Prior

to February 8, 1887, Wa-me-go, who commenced this suit, and all the other parties named herein, were members of the Prairie band of the Pottawatomie tribe of Indians, and resided on the diminished Pottawatomie reservation, in Jackson county, Kansas. By an established custom among these Indians marriage is regarded as a relation which may be assumed or dissolved at the pleasure of the parties thereto. No formal contract or ceremony is essential—a mere mating and cohabitation as husband and wife constitute marriage. This important relation may by the same custom be terminated whenever it becomes tiresome, or when for any reason a change is desired. Separation by mutual consent is equivalent to an absolute divorce, and the parties are thereafter free to form other marital alliances, as may best suit their pleasure or convenience.

In accordance with this custom Wa-me-go and Shough-ne-gish-go-quah were married, and became the parents of two sons, George and Henry Wa-me-go. While they were living together as husband and wife the lands of the reservation were allotted among the Indian occupants thereof, and patents were duly issued and delivered in accordance with such allotment, whereby the allottees became the owners in severalty of the lands allotted to them respectively. By such allotment each of the parties named herein became the owner in severalty of a part of the land so allotted, and Shough-ne-gish-go-quah became the owner of the land in controversy.

After this allotment was completed, and patents had been duly issued and delivered to each of the above-mentioned allottees in compliance with the provisions of chapter 119 of volume 24 of the United States Statutes at Large (page 388), Wa-me-go and Shough-ne-gish-go-quah, upon the supposition that they were still living under the tribal customs, as formerly, separated and ceased to live together as husband and wife, and each again married, in accordance with the tribal cus-

Moore v. Nah-con-be.

tom.   Thereafter Shough-ne-gish-go-quah and the de-
fendant, Nah-con-be, *alias* Henry Clay Bear, lived to-
gether as husband and wife, and continued so to co-
habit until her death, which occurred August 2, 1900.

The separation of the plaintiff and Shough-ne-gish-
go-quah, and their subsequent marital relations as
hereinbefore stated, took place by virtue of the Indian
custom, and had no other sanction or authority.   After-
ward George Wa-me-go died, leaving his parents, both
of whom were then living, as his sole heirs at law.

After the trial in the district court, and after the
case-made had been settled and signed, Wa-me-go died,
and the suit was revived in the name of J. P. Moore,
administrator of the estate of Wa-me-go, who brings
the case here, joining Henry Wa-me-go as a defendant
in error.

Defendant in error Nah-con-be has filed a motion to
dismiss the petition in error for the reason that the
subject of the suit appears to be real estate, in which
an administrator has no interest.   Upon this motion
the plaintiff in error claims that after the final de-
cree in the district court, and before the order of re-
vivor was made, all the parties agreed that the lands in
controversy should be sold and the proceeds placed in
the hands of the United States Indian agent until the
final decree was entered in the case, and that then such
proceeds should be disposed of in accordance with such
final decree; and some evidence (including a convey-
ance of the lands executed by all the parties, including
the defendant and his new wife, and duly approved by
the secretary of the interior) has been presented, but
no proper showing has been made upon either side of
this question, and this court has nothing tangible to act
upon.   We therefore, in compliance with the general
presumption which exists in favor of all judgments
and orders of courts of general jursdiction, will as-
sume that the district court, when it made this order
of revivor, had adequate reasons therefor, and the
motion to dismiss is denied.

The district court decided that the separation of the plaintiff and his wife, Shough-ne-gish-go-quah, under the custom of their tribe, was equivalent to a divorce; that her subsequent affiliation with the defendant, Nah-con-be, in accordance with such custom, constituted a valid marriage; and that the defendant was therefore entitled to the undivided one-half of her estate.

The plaintiff in error claims that after the allotment the tribal relations of these parties were severed, and they immediately became citizens of the state of Kansas and subject to its laws; and that, as this separation and marriage occurred after the allotment, their rights and duties as married people are to be measured by the same rule that applies to other citizens. To this contention we agree.

It is a general rule, having few, if any, exceptions, that a marriage valid where consummated is valid everywhere; and this rule has been quite generally applied to Indian marriages, where the marriage was contracted while the tribal relations of the parties continued. (19 A. & E. Encycl. of L. 1216; *Earl v. Godley,* 42 Minn. 361, 44 N. W. 254, 7 L. R. A. 125, 18 Am. St. Rep. 517.) This rule, however, does not benefit the defendant, for it is conceded that the marriage of Wa-me-go to Shough-ne-gish-go-quah, although an Indian marriage, was valid, and continued to be so until her death. Therefore, their subsequent separation, by mutual consent merely, and her subsequent cohabitation with Nah-con-be, were illegal and void, and conferred no right upon the defendant to share in her estate.

On February 8, 1887, congress enacted a statute (24 U. S. Stat. at L., ch. 119, p. 388) providing for the allotment of lands among Indian bands and tribes, and conferring upon the allottees the rights of citizenship in the state where the lands were located. Section 6 of this act has special application here, and reads:

"That upon the completion of said allotments and the patenting of the lands to said allottees, each and

Moore v. Nah-con-be.

every member of the respective bands or tribes of Indians to whom allotments have been made shall have the benefit of and be subject to the laws, both civil and criminal, of the state or territory in which they may reside; and no territory shall pass or enforce any law denying any such Indian within its jurisdiction the equal protection of the law."

By this statute. congress evidently intended to elevate these allottees from the irresponsible condition of "wards of the nation" to the position of free and independent citizens of the United States and of the state of Kansas. (*United States v. Bickert*, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532; *Matter of Heff*, 197 U. S. 488, 25 Sup. Ct. 506, 49 L. Ed. 848; *In re Now-ge-zhuck*, 69 Kan. 410, 67 Pac. 877.)

As soon as the allotment was completed these parties became subject to all the laws of the state of Kansas, like other citizens, and were absolved from all their tribal relations. Thereafter they were bound to take notice of, and conform to, the laws of this state. If they desired a divorce, application should have been made to the courts therefor, in the usual way, and they would have found that the law interposes no unreasonable obstacle to such a proceeding. In this manner the subsequent happiness of the defendant might have been fully realized without violating the law.

The defendant and his supposed wife no doubt acted in good faith, upon the mistaken belief that they were legally married to each other; and their long, continuous cohabitation might be construed into a common-law marriage, which has been held to be valid in this state, were it not that her former marriage with the plaintiff must be held valid, as it has never been legally dissolved.

We, therefore, decide: (1) That the marriage of Wa-me-go to Shough-ne-gish-go-quah was valid; (2) that upon the completion of the allotment proceedings all the parties hereto at once became citizens of the state of Kansas, and subject to all the laws thereof; (3) that thereafter the aforesaid marriage could not

be annulled except by proceedings under the law of this state for that purpose, which were not had; (4) that said marriage existed and was in full force and effect at the time of the death of Shough-ne-gish-go-quah, and at that time Wa-me-go was her legal husband and entitled to one-half of her estate.

The facts having been agreed to, it will be proper for us to direct judgment thereon. The district court is instructed to vacate its judgment so far as the defendant, Nah-con-be, is concerned, and to decree that the plaintiff, Wa-me-go, was the surviving legal husband of Shough-ne-gish-go-quah, and entitled to one-half of her estate, and make such order as will fully carry out the views herein expressed.

All the Justices concurring.