## In re WO-GIN-UP'S ESTATE.

No. 3454.   Decided August 2, 1920.   On Petition for Rehearing September 8, 1920.   (192 Pac. 267.)

1.  EXCEPTIONS, BILL OF—WHERE BILL SERVED WITHIN TIME, FAILURE OF COURT TO CERTIFY IMMATERIAL. Where by several entries the court extended the time for filing bill of exceptions until November 20, and the proposed bill of exceptions was served on respondent's attorneys November 7, it will be considered on appeal, although the court neglected to attach its certificate until December 22.

2.  MARRIAGE—INDIAN, COHABITING WITHOUT DIVORCE, CONFERRED

NO RIGHTS ON SECOND WOMAN. Where an Indian, subject to the laws of the territory of Utah, and no longer governed by tribal relations, abandoned a wife, and on her marriage to another pursuant to tribal law such Indian began- cohabiting with a second woman, there being no divorce, the relation with the second woman, though recognized by tribal law, was adulterous and conferred on her no right of inheritance.[1]

3. PUBLIC LANDS—DECISION OF LAND BOARD THAT INDIAN HAD ABANDONED TRIBAL RELATIONS CONCLUSIVE. Under Act Cong. March 3, 1875, section 15 (U. S. Comp. St., section 4611), providing that any Indian who had abandoned tribal relations shall, upon making a satisfactory proof, be entitled to the benefit of Homestead Act May 20, 1862, chapter 75, 12 Stat. 392, a finding of the land board, awarding an Indian a homestead, is a conclusive adjudication that he had abandoned tribal relations, and in a proceeding for distribution of his estate will preclude a woman, married to him according to tribal custom, from sharing; it appearing that at the time of the marriage the Indian had a living wife, from whom he was divorced pursuant to tribal custom, but not according to the law of the territory of Utah, in which he was living and the marriage was celebrated.[2]

4. DIVORCE—INDIANS—MARRIAGE—VALIDITY OF MARRIAGE OF INDIAN LIVING OUTSIDE RESERVATION GOVERNED BY LAW OF STATE. Where a Shoshone Indian living in Utah, in which state there was no reservation, divorced his wife and married another, pursuant to tribal custom, the divorce and second marriage were invalid, there being no compliance with the local laws, for an Indian, not living as part of the tribe or on a reservation, is subject to the laws of the state just as much as an emigrant from a foreign country.

On Petition for Rehearing.

5. MARRIAGE—PRESUMPTION IN FAVOR OF MARRIAGE. Every intendment of law is in favor of matrimony, and the party asserting the illegality of a marriage has the burden of proving it, for when a marriage has been shown in evidence, whether regular or irregular, the law raises a presumption of its legality.

[1] *Norton* v. *Tufts*, 19 Utah, 470, 57 Pac. 409; *Hilton* v. *Roylance*, 25 Utah, 129, 69 Pac. 660, 58 L. R. A. 723, 95 Am. St. Rep. 821; *Palmer* v. *Palmer*, 26 Utah, 31, 72 Pac. 3, 61 L. R. A. 641, 99 Am. St Rep. 820.

[2] *Ferry* v. *Street*, 4 Utah, 535, 11 Pac. 575.

6.  MARRIAGE—NO PRESUMPTION IN FAVOR OF WOMAN COHABITING
    WITH INDIAN WHO HAD LIVING WIFE.  Where an Indian who
    had left the tribe began cohabiting with a second woman, when
    his wife, pursuant to tribal custom, married another on his
    leaving her, and it appeared that the second woman and the
    Indian were brought together by another Indian, the rules as
    to presumptions in favor of the validity of marriage and of the
    existence of divorce do not apply.

Appeal from First District Court, Box Elder County;
*J. D. Call,* Judge.

In the matter of the estate of Wo-gin-up.  From a decree
of distribution in favor of See-va-pitche, Dick Crum and
one Andzi, claiming to be widow of deceased, appeal.

REVERSED and REMANDED, with directions.

*Le Roy B. Young,* of Brigham City, for appellant Andzi.

*George Halverson,* of Ogden, and *Frank Curran,* of Reno,
Nev., for appellant Crum.

*Chez & Barker,* of Ogden, for respondent See-va-pitche.

GIDEON, J.

This is an appeal from a decree of distribution of the
estate of an Indian, Wo-gin-up, who died intestate in Box
Elder county, this state, on or about February 11, 1904.
The appeal is by two separate claimants.

The deceased left real property in said county valued, as
shown by the inventory, at $4,500.  On May 19, 1917, letters
of administration were issued in said estate, and thereafter,
on July 26, 1918, the administrator filed a final report and
petition for distribution.  In that petition the administrator
reported that the deceased left a widow named See-va-pitche;
that as such she was entitled to receive the entire estate.
Thereupon one Andzi contested the claim of the administra-

tor that See-va-pitche was the surviving widow of the deceased, and in her petition claimed that she is the surviving widow of Wo-gin-up and as such is entitled to receive the property of the estate. Andzi is one of the appellants here. The appellant Dick Crum also contested the claim made by the administrator, and denied that either of the other claimants is the surviving widow of the deceased. He asserted. that if either had ever been lawfully married to the deceased such marriage or marriages had been dissolved during the life of Wo-gin-up.

It is agreed that the appellant Crum is a nephew, being the son of a sister of the deceased, and that if neither of the other claimants is entitled to the estate he is the sole heir.

The respondent See-va-pitche also filed a petition, in which she claimed to be the widow of the deceased, and asked that the recommendations and report of the administrator be approved, and that she be decreed the land belonging to the estate.

The issues presented by these different petitions, contests, and objections were tried to the court, and findings made to the effect that the petitioner See-va-pitche is the widow of the deceased. The court's conclusion of law is that See-va-pitche is entitled to the estate. Judgment was entered accordingly. From that judgment or decree of distribution the alleged widow Andzi and the nephew Crum appeal.

Before considering the merits it is necessary to decide a motion filed by respondent See-va-pitche to strike the bill of exceptions from the record. One of the grounds of said motion is that the court was without jurisdiction to settle the bill on December 22, 1919, the date which the court's certificate bears.

Judgment was rendered in the case on August 1, 1919. Motions for a new trial were made by both appellants. These motions were denied on September 15, 1919. Notice of the order overruling the motion was served upon counsel for appellant Andzi on the same day, and on the 17th of that month on counsel representing appellant Crum. It appears in the bill of exceptions that on the 7th day

of October the court granted appellants thirty days additional time in which to prepare and serve a proposed bill of exceptions; that again on the 31st day of October, 1919, a further order was made, granting appellants twenty days additional time. The proposed bill of exceptions was served upon the attorneys for the respondent on the seventh day of November, 1919. It will thus be seen that the proposed draft was served within the time fixed by the orders of the court extending such time. The contention that because the court neglected to attach its certificate until the twenty-second of December of that year cannot avail the respondent, or defeat the right of appellants to be heard. The motion to strike will be denied.

The court, in substance, found: The deceased died in Box Elder county, Utah, in March, 1904. At the time of his death, and during his entire life, he was a member of the Shoshone Tribe of Indians, and with them roamed at various times through the northern part of Utah, Western Wyoming, Southern Idaho, and Nevada. He was married to an Indian woman known as Andzi about the year 1875, and they lived as husband and wife until about the year 1885, when deceased went to the state of Nevada, and during his absence his wife Andzi married another Indian. By these acts the deceased, Wo-gin-up, and Andzi, according to the established rules, customs, practices, and tribal laws of such Indians, became divorced, and such divorce was valid and legal. During the time Wo-gin-up and Andzi lived together as husband and wife the deceased also lived with another Indian woman, but that woman died prior to the year 1885, and before the deceased was married to the respondent See-va-pitche. Some time in the year 1885, upon the return of Wo-gin-up from Nevada, he was married in Cache county, Utah, to the respondent See-va-pitche, and from that time on until the date of his death they lived and cohabited together. Such marriage was, according to the established rules, customs, practices, and laws of the said Shoshone Tribe of Indians, a valid and legal marriage, and continued to be such until his death. After the marriage of the deceased to See-va-pitche in 1885

he contracted no other or additional marriage.  Neither Wo-gin-up nor See-va-pitche did anything during that time that, according to the customs, rules, practices, and laws of the Indian tribe, would effectuate a divorce.

The court's sixth and seventh findings are as follows:

"(6)     That the established and recognized customs, rules, practices, and laws of the Shoshone Tribe of Indians during the period herein covered, and until after the death of Wo-gin-up, to wit, from 1875 to 1904, was that they may marry and divorce each other at the pleasure of the parties thereto; that no formal contract or ceremony was necessary, and that separation by mutual consent, or where one party leaves and marries another, is an absolute divorce, and the other party is thereafter free to form other marital alliances; that the Shoshone Tribe of Indians at Washikee, including Wo-gin-up, Andzi, Bowmaker's daughter Idea-up, alias Nan-zi-hu, Washigo, and See-va-pitche, observed said rules, customs, and practices of their tribe of Indians during the time herein stated.

"(7) That the band of Shoshone Indians located at Washikee, of which Wo-gin-up, Andzi, Bowmaker's daughter, alias Idea-up, alias Nan-zi-hu, Washigo, and See-va-pitche were members, kept up and maintained their Indian customs and tribal relations during all of the period from Wo-gin-up's first marriage to Andzi up to his death in 1904; that during this period the said Indians at intervals roamed, hunted, and fished through the country in bands under their recognized tribal leaders, and while they had tents and houses to live in at Washikee they lived as a community and not in severalty, not as individual families; and that during all of said period they continued their tribal relations, and did not assume, practice, or exercise the duties and privileges of citizenship, and did not pay taxes."

In addition it conclusively appears that in or about the year 1877 the deceased, Wo-gin-up, applied to the general government for a homestead in Box Elder county; that subsequently, on May 31, 1884, he received a patent for the land described in his homestead application, being the land now in question.  The provisions of section 15 of the congressional act of March 3, 1875 (U. S. Comp. St. section 4611), under and by virtue of which the deceased applied for the homestead, so far as material here, are as follows:

"That any Indian born in the United States, who is the head of a family, or who has arrived at the age of twenty-one years, and

who has abandoned, or may hereafter abandon, his tribal relations, shall, on making satisfactory proof of such abandonment, under the rules to be prescribed by the Secretary of the Interior, be entitled to the benefits of an act entitled 'An act to secure homesteads to actual settlers on the public domain,' approved May twentieth, eighteen hundred and sixty-two, and all acts amendatory thereto: * * * Provided, that any such Indian shall be entitled to his distributive share of all annuities, tribal funds, lands, and other property, the same as though he had maintained his tribal relations; and any transfer, alienation, or incumbrance of any interest he may hold or claim by reason of his former tribal relations shall be void."

If the deceased, Wo-gin-up, at the time of his claimed divorce from the appellant Andzi and his marriage to the respondent See-va-pitche, was not subject to the laws and customs of the tribe of Shoshone Indians, the divorce and subsequent marriage were void, and his relation with See-va-pitche thereafter was adulterous, and conferred upon her no right of inheritance. *Norton* v. *Tufts,* 19 Utah, 470, 57 Pac. 409; *Hilton* v. *Roylance,* 25 Utah, 129, 69 Pac. 660, 58 L. R. A., 723, 95 Am. St. Rep. 821; *Palmer* v. *Palmer,* 26 Utah, 31, 72 Pac. 3, 61 L. R. A. 641, 99 Am. St. Rep. 820.

It is contended by counsel for appellant Andzi that, by reason of the provisions of the act of Congress under which the homestead application was made and the patent subsequently issued, before the deceased could make such application or receive a patent, the Secretary of the Interior must have found that Wo-gin-up had abandoned his tribal relations. It is also contended that, having abandoned such relation, he became subject to the laws of the state or territory in which he resided, and was thereafter no longer subject to the laws and customs of the tribe of Indians of which he was formerly a member. By the terms of the congressional act of March 3, 1875, abandonment of tribal relations was necessary before Wo-gin-up was entitled to the benefits of the homestead act, and in our judgment it must be conceded that the officers of the Land Department were satisfied of such abandonment before receiving and filing the application. The acts of such officers in accepting the application

and afterwards issuing the patent establish the fact that proof of such abandonment had been produced and a finding to that effect made, ''for it is a rule of very general application, that where an act is done which can be done legally only after the performance of some prior act, proof of the latter carries with it a presumption of the due performance of the prior act.'' *Knox County* v. *Ninth National Bank,* 147 U. S. 97, 13 Sup. Ct. 270, 37 L. Ed. 93. See, also, *Cyr* v. *Walker et al.,* 29 Okl. 281, 116 Pac. 931, 35 L. R. A. (N. S.) 795. The trial court, however, found as a fact that the deceased, during the years from 1875 to the date of his death, was a member of the tribe of Shoshone Indians subject to its regulations respecting marriage and divorce. The question presented for our determination, therefore, is whether that finding of the court, supported as it is by some evidence, must control, or whether the finding of the Land Department is binding and controlling in this case.

The conclusiveness of the findings of the Land Department upon a court of law is stated in the first headnote to *Smelter Co.* v. *Kemp,* 104 U. S. 636, 26 L. Ed. 875, as follows:

"A patent, duly signed, countersigned, and sealed, for public lands which, at the time it was issued, the Land Department had, under the statute, authority to convey, cannot be collaterally impeached in an action at law; and the finding of the department touching the existence of certain facts, or the performance of certain antecedent acts, upon which the lawful exercise of that authority may in a particular case depend, cannot in a court of law be questioned."

See, also, *Vance* v. *Burbank,* 101 U. S. 514, 25 L. Ed. 929; *Bagnell et al.* v. *Broderick,* 13 Pet. 436, 10 L. Ed. 235.

This court, in *Ferry* v. *Street,* 4 Utah at page 535, 11 Pac. at page 575, quotes in support of the conclusions reached in that case from *Steel* v. *Smelting Co.,* 106 U. S. 447, 1 Sup. Ct. 389, 27 L. Ed. 226, as follows:

"That [the land] department, as we have repeatedly said, was established to supervise the various proceedings whereby a conveyance of the title from the United States to portions of the public domain is obtained, and to see that the requirements of different acts of Congress are fully complied with. Necessarily, therefore, it must consider and pass upon the qualifications of the

applicant, the acts he has performed to secure the title, the nature of the land, whether it is of the class which is open to sale. Its judgment upon these matters is that of a special tribunal, and is unassailable, except by direct proceedings for its annulment or limitation. Such has been the uniform language of this court in repeated decisions.

It will thus be seen that the Land Department, in permitting the filing of the application for a homestead and in considering the "qualifications of the applicant," must of necessity have determined that Wogin-up had abandoned his tribal relations, otherwise he would not have had the qualifications required by the congressional act to entitle him to make such filing. That finding, in our judgment, is binding upon this court.

It is uncontradicted that the alleged divorce from appellant Andzi occurred in Box Elder county, and that the subsequent marriage to the respondent took place in Cache county, this state (then territory). There is no contention or claim made that any part of either of such counties was or ever had been included within an Indian reservation. The laws of the territory of Utah must therefore have extended to all of the inhabitants of that part of the state, unless these Indians by reason of their former connection with their tribe were exempt from such laws. The home or headquarters of the Shoshone Tribe of Indians was at Ft. Washikee, state of Wyoming, and upon the Shoshone reservation in the state of Nevada. These Indians claimed the right to go to either place. It is true that it appears—and none of these facts are disputed—that after the divorce from Andzi the deceased left the state and went upon the reservation in Nevada, but he subsequently returned and was married to See-va-pitche in Utah Territory. The deceased, Wo-gin-up, the respondent See-va-pitche, and the appellant Andzi were therefore subject to the civil and criminal laws of the local jurisdiction, or they were answerable to no recognized authority for any violation of such laws. No authority was given to the courts to enforce the customs and laws of the Indian tribe against Indians residing within this state having their reservation or headquarters without

the state.   The Indians must therefore have been subject, both in their domestic relations and in their business and civil affairs, to the laws of the then territory of Utah.

The fact that all these parties probably acted in absolute good faith and conceived that they had been legally divorced and married according to their tribal customs cannot avail them in the face of the positive law of the state in which they resided, and to which law they were subject.   The status of the deceased, Wo-gin-up, was not different from that of the plaintiff in *Elk* v. *Wilkins*, 112 U. S. 94, 5 Sup. Ct. 41, 28 L. Ed. 643.   In the course of the opinion in that case, quoting from *Scott* v. *Sanford*, 19 How. 393, 15 L. Ed. 691, it is said:

" * * * If an individual should leave his nation or tribe, and take up his abode among the white population, he would be entitled to all the rights and privileges which would belong to an emigrant from any other foreign people."

It will not be contended that if an emigrant, or even a company of emigrants, from any foreign country or people had settled in Box Elder county, as these Indians did, such emigrant or company of emigrants would have been free to violate the local laws without being liable to prosecution for such violation.   Neither will it be contended that their property rights, as well as their domestic relations, were not subject to such local laws.   True it is that the court found, and there is testimony in the record to support such finding, that the deceased continued to arrange his domestic relations as warranted by the laws and traditions of his tribe.   While it may be true that the American Indian has never been able to divorce himself from the traditions of his tribe, it is likewise true that the Indian is not alone in his inclination to hark back to the fathers in justification of conduct not sanctioned by modern ideas.   Nevertheless, it is universally held by the courts that to so do will not justify a violation of the laws of the land, nor relieve the parties from its consequences.   It is admitted that Andzi was the first wife of the deceased.   It is also admitted that no divorce was granted, except such as is recognized by the laws of the tribe,

and, as we have seen, this can have no effect upon the conclusion to be arrived at on this appeal.

On the other hand, it is the uniform holding of the courts that, so long as Indians maintain their tribal relations, the courts will recognize the tribal customs prevailing and administered by such tribes, especially respecting their domestic relations. The Supreme Court of Oklahoma in *Cyr* v. *Walker*, 29 Okl. at page 289, 116 Pac. at page 934, 35 L. R. A. (N. S.) 795, says:

"The courts of the American Union have, from an early time, recognized the validity of marriages contracted between the members of any Indian tribe in accordance with the laws and customs of such tribe, where the tribal relations and government existed at the time of the marriage, and there was no federal statute rendering the tribal customs or laws invalid;   *   *   *   and such marriages between a member of an Indian tribe and a white person, not a member of such tribe, have been held and regarded as valid, the same as such marriages between members of the tribe. *   *   *   And the same effect is given to the dissolution of the marriages under the customs of the tribe as is given to the marriage relation itself."

In *James* v. *Adams*, 56 Okl. 450, 155 Pac. 1121, the first headnote reads as follows:

"Marriages, contracted between tribal Indians according to the usages and customs of their tribe, at the time when the tribal government and relations are existing, will be upheld by the courts, in the absence of a federal law rendering invalid the laws and customs of the tribe.   (a) A dissolution of the marriage contract, according to such tribal laws, usages, and customs, will be likewise upheld by the courts."

Mr. Chief Justice FULLER, in *Stephens* v. *Cherokee Nation*, 174 U. S. at page 485, 19 Sup. Ct. at page 737, 43 L. Ed. 1041, quotes from *U. S.* v. *Kagama*, 118 U. S. 375, 6 Sup. Ct. 1109, 30 L. Ed. 228, the following:

"They [the Indians] were, and always have been, regarded as having a semiindependent position when they preserved their tribal relations; not as states, not as nations, not as possessed of the full attributes of sovereignty, but as a separate people, with the power of regulating their internal and social relations, and thus far not brought under the laws of the Union or of the state within whose limits they reside."

It will be observed from the foregoing excerpts that in every case the courts in upholding a marriage or divorce contrary to the laws of the land made the same dependent upon the fact that at the time of such marriage or divorce the parties retained their tribal relations. To the same effect are the following cases: *Moore* v. *Nah-con-be et al.*, 72 Kan. 169, 83 Pac. 400; *James et al.* v. *Adams*, 56 Okl. 450, 155 Pac. 1121; *Oklahoma Land Co.* v. *Thomas*, 34 Okl. 681, 127 Pac. 8; *Kobogum* v. *Jackson Iron Co.*, 76 Mich. 498, 43 N. W. 602; *Boyer* v. *Dively, Adm'r*, 58 Mo. 510; *Wall* v. *Williamson*, 8 Ala. 48; *Wall* v. *Williams*, 11 Ala. 826.

The foregoing is conclusive of this case, and it is not necessary to consider the questions presented by the appellant Crum.

We conclude, therefore, that the court's finding that Wo-gin-up, the deceased, was subject to the laws of the tribe of Shoshone Indians during the time of his residence within the territory and state of Utah cannot be sustained, and he must be held to have been subject to the local laws and regulations, and that the rights of the parties here claiming his estate must be controlled by such laws. The title to this real estate, therefore, descends to his legal wife, to wit, the appellant Andzi.

Under the facts as they appear in this record, to hold that the tribal laws and customs of the Shoshone Indians were in force within the state of Utah at the date of the supposed divorce of Wo-gin-up and the appellant Andzi is extending the recognition liberally given by the courts to the laws and customs of Indian tribes one step farther than any court has heretofore ever gone. In fact, it would be giving sanction and force to laws repugnant to the statutes of this state in favor of people residing within the state who were not subject to the control or regulation of the federal or any other government. This courts should not and are not authorized to do.

An opinion in which a conclusion contrary to the result herein reached was formerly filed in this case. A petition for a rehearing was thereafter filed by the appellants, and

upon a re-examination of the record we are now convinced that the order striking the bill of exceptions made in the former opinion should not have been made. We have accordingly considered the appeal upon the entire record, including the bill of exceptions, and have arrived at the conclusions stated herein. It would subserve no good purpose to grant a rehearing, and for that reason a rehearing is denied. The former opinion is recalled, and this will be published as the official opinion in the case.

The cause will be remanded to the district court, with directions to correct the findings and to enter judgment in conformity with the views herein expressed. The costs of this appeal of both the appellants and of the respondent See-va-pitche will be taxed against the estate.

CORFMAN, C. J., and FRICK, WEBER, and THURMAN, JJ., concur.

On Petition for Rehearing.

GIDEON, J. Petition has been filed on behalf of respondent, See-va-pitche, in which two grounds are strenuously argued for granting a rehearing.

(a) It is contended that, admitting the Secretary of the Interior did and must have found as a condition precedent to receiving his application for a homestead that Wo-gin-up had severed his tribal relations, the presumption resulting therefrom is rebutted and overcome by the findings of the district court that he did not in fact sever such relations, but that he was at the time of his death and during all of his life a member of the Shoshone Tribe of Indians. We are satisfied that the conclusion reached respecting the binding effect upon this court of the findings made by the Interior Department is supported by the authorities cited.

(b) It is further contended that if it be admitted that Wo-gin-up had severed his tribal relations and had, after his separation from Andzi, married See-va-pitche, in the absence of proof of the contrary this court must indulge the presumption that before such mar-

riage he had been divorced from his first wife, Andzi. It is insisted, quoting from *Chancey* v. *Whinnery,* 47 Okl. 272, 147 Pac. 1036, that—

"Every intendment of law is in favor of matrimony. The law is so positive in requiring a party who asserts the illegality of a marriage to take the burden of proving it that such requirement is enforced, even though it involve the proving of a negative. When a marriage has been shown in evidence, whether regular or irregular, and whatever the form of the proofs, the law raises a presumption of its legality, not only casting the burden of proof on the party objecting, but requiring him throughout and in every particular plainly to make the fact appear, against the constant pressure of this presumption, that it is illegal and void."

The rule of law as stated in the above quotation, and invoked by respondent, is undoubtedly supported by the authorities. It has no application in this case, how-    6 ever, for the reason that the testimony establishes and the court found the method or manner by which Wo-gin-up was divorced from Andzi, namely, that he left and went West and Andzi remarried. Furthermore, it appears that Wo-gin-up and the respondent See-va-pitche were brought together by another Indian, and began their relationship as husband and wife without any ceremony or form of marriage recognized by the laws of the territory or state of Utah.

The petition for rehearing is denied.

CORFMAN, C. J., and FRICK, WEBER, and THUR-MAN, JJ., concur.