## BLACKBURN et al. v. JONES.

No. 3703.  Decided February 24, 1922.  Rehearing denied March 23, 1922.  (205 Pac. 582.)

1. APPEAL AND ERROR—BILL OF EXCEPTIONS NOT PRESENTED TO COURT WITHIN REQUIRED TIME BECAUSE OF RESPONDENT'S FAILURE TO RETURN IT WILL NOT BE STRICKEN. Bill of exceptions served within the required time, but not settled by the court within the time allowed for the presentation and its service, will not be stricken on motion of respondent, where the only reason for the failure to present the bill for allowance within the required time was respondent's failure to return it.[1]

2. DEEDS—GIFTS—SON'S CLAIM TO MOTHER'S LAND MADE AFTER MOTHER'S DEATH UNDER DEEDS CLAIMED TO HAVE BEEN EXECUTED BY MOTHER CLOSELY SCRUTINIZED. Where a mother devised land equally between her children, and it was apparent that she desired children to share equally in her estate, a claim made to a portion of her land by one child who recorded deeds to him from her after her death will be closely scrutinized by equity.

3. DEEDS—GIFTS—SON CLAIMING MOTHER'S LAND UNDER DEEDS PRODUCED AFTER MOTHER'S DEATH MUST PROVE CONVEYANCE WAS AS A GIFT OR FOR A VALUABLE CONSIDERATION. Son claiming mother's land under deeds from her not recorded or produced until after she had died leaving will devising land to children in equal shares had burden of satisfactorily explaining that the conveyance was made either as a gift or for a valuable consideration.

[1] *Blackburn* v. *Baker*, 47 Utah, 219, 152 Pac. 1188; *Wo-gin-up Estate*, 57 Utah, 29, 192 Pac. 267.

4. TRIAL—REFUSAL TO PERMIT DEVISEES TO BE REPRESENTED BY COUNSEL IN EXECUTOR'S ACTION AGAINST TESTATOR'S SON, WHO CLAIMED OWNERSHIP OF LAND DEVISED, HELD ERROR. In action by mother's executor against son, to quiet title to land claimed by son under deeds from mother, who had devised the land to all children in equal shares, refusal to permit other children made parties to the action to be represented by separate counsel *held* error.

FRICK, J., dissenting.

Appeal from District Court, First District, Box Elder County; *Wilson McCarthy*, Judge.

Action by Thomas H. Blackburn, as executor of the estate of Ann H. Burt, deceased, and others against Ricy H. Jones. Decree for defendant, and plaintiffs appeal.

JUDGMENT REVERSED, and remanded.

*B. H. Jones,* of Brigham City, for appellants.

*Ricy H. Jones,* of Brigham City, pro se.

GIDEON, J.

The plaintiff below, one of the appellants here, as executor of the last will of Ann H. Burt, seeks a decree quieting title to certain real property described in the complaint. The defendant claims title through deeds alleged to have been executed by the deceased some years prior to her death. The real property in question is located in Box Elder county, this state. The deceased resided in that county at the date of her death, and had for many years prior thereto. The defendant below, respondent here, is a son of the deceased. The other parties except the executor appearing as plaintiffs and appellants are also children of the deceased. The judge of the district court for Box Elder county being disqualified, Judge Agee, from the Second district, was called to try the cause. A trial was had in the year 1918, and a decree entered

quieting the title to the property in question in plaintiff. Subsequently a new trial was granted, and Judge McCarthy, from the Third district, heard the case, and a decree was entered quieting the title in the defendant. From that judgment this appeal is taken.

It appears that when the matter was first called for trial in April, 1918, the court was of the opinion that it was necessary for a complete determination of the matters in controversy that William H. Jones, Esdras H. Jones, B. Howell Jones, Alice H. Rosenbaum, and John H. Burt, should be made parties to the action. An order was accordingly made directing that summons be served upon said parties, if they failed to voluntarily appear, and that they be required to set up, either as plaintiffs or defendants, any title or interest they, or either of them, claimed to the property in question. Subsequently Esdras H. Jones, B. Howell Jones, and Alice H. Rosenbaum, for themselves and as assignees or transferees of William H. Jones and John H. Burt, appeared and filed a pleading and joined in the prayer of the complaint—in other words, became plaintiffs in the action. It should be said in passing that B. Howell Jones and Ricy H. Jones are attorneys at law, and members of the bar of this state. B. Howell Jones and William J. Lowe signed the paper or pleading designated "family appearance" by Esdras H. Jones and others, in conformity with the order requiring these individuals to be made parties to the proceeding.

Before proceeding to a discussion of the errors it is necessary to determine a motion to strike the bill of exceptions.

It appears that, after entering judgment quieting title in respondent a motion for new trial was made. That motion was denied July 14, 1920. The trial judge granted appellants 30 days' additional time to prepare and serve a bill of exceptions. It also appears that on or about September 11, 1920, appellants did prepare and serve upon counsel for respondent a proposed bill of exceptions consisting as stated in the brief, "of about 44 pages of closely written typewritten matter." So far as the record now before this court shows, that proposed bill of exceptions was never returned

by respondent to the court, the appellants, or their attorneys. True it is the respondent denies ever having received such bill of exceptions. There are, however, found in the record two affidavits, one by William J. Lowe, who was attorney for the executor, and one by Le Roy B. Young, who at that time was one of the attorneys for the respondent. Both of these men are reputable members of the bar of this state, and this court has no hesitancy in saying that it accepts their statements as conclusive on the controversy as to whether this bill of exceptions was ever prepared, served, or received by counsel. There is found in the record a copy of a receipt executed by Mr. Young that he received the proposed bill of exceptions on September 11, 1920. The affidavit of Mr. Lowe is to the effect that he is an attorney of record in this case; that the proposed original draft of a bill of exceptions was prepared on behalf of appellants, and was served upon Le Roy B. Young. It is also stated in the affidavit that no amendments were proposed to the bill to the best of affiant's information, and that the original draft was never returned to him, and that he was informed by Mr. Young that it was held by the defendant, respondent here. Mr. Young in his affidavit states that he had been counsel for respondent in this case; that frequently papers were served upon him, that he recalls the original draft of the bill of exceptions being served upon him; that he receipted for the same and delivered said bill to the respondent personally; that no amendments were proposed to the recollection of affiant, and after a period of 10 days a request was made that it be returned. Respecting that matter Mr. Young in his affidavit says:

"In fact, B. H. Jones repeatedly called and applied for the return of the original bill of exceptions, and I requested Ricy H. Jones to return it to me so that I could deliver it, but it was never returned to me by the defendant herein or by any other person."

At a later date such proceedings were had that the present bill of exceptions was settled by the present judge in that district.

It will be seen from the foregoing that the proposed draft of the bill was prepared and served within the time allowed

under the orders made extending the time for the preparation and service of the bill. From the showing made it must be concluded that the only reason why the bill was not presented to the court for allowance was the act of the respondent in not returning it. Under that state of facts the appellants should be given an opportunity to present a bill of exceptions and have the matter heard by this court upon the record made in the district court. To permit respondent now to object to the jurisdiction of the court to settle the bill would be both inequitable and unfair, and should not be permitted. 4 C. J. 476. A proposed bill having been served in time, the fact that it was not settled by the court within the time allowed for its presentation and service will not justify or authorize an order striking the same from the record. *Blackburn* v. *Baker*, 47 Utah, 219, 152 Pac. 1188; *Wo-gin-up Estate*, 57 Utah, 29, 192 Pac. 267. The motion to strike will be denied.

When the case was called for trial at the second hearing counsel for appellants requested a jury to try the issues of fact. The request was denied. Thereupon 'the following colloquy was had between counsel and court respecting the appearance of B. H. Jones as counsel for the heirs:

"The Court: You may proceed.

"Mr. B. H. Jones: We have here, if your honor please, an application for a continuance.

"The Court: On file?

"Mr. Allen: No; we haven't been served with any application or with any affidavits.

"Mr. B. H. Jones: The affidavit is as you hold it in your hand.

"Mr. Allen: This affidavit shows no motion for any continuance.

"The Court: May I get the name of the counsel? Mr. Jones, in this case I would prefer that you proceed through your counsel inasmuch as you are a party to the action, and likewise the other gentleman; I prefer that he should also proceed through his counsel. I think that is the proper way to proceed, and I understand that that has been the order of this court heretofore, and that will be the order of this court.

"Mr. B. H. Jones: To the ruling of the court we respectfully reserve an exception, and I will say to your honor I represent plaintiffs in this case that my associate counsel do not represent.

"The Court: You appear personally for some of these plaintiffs?

"Mr. B. H. Jones:   Yes; Alice H. Rosenbaum.

"The Court:   You are not appearing, Mr. Lowe?

"Mr. Lowe:   Not for Mrs. Rosenbaum.

"Mr. Allen:   I think the pleadings are signed with all the names.

"Mr. Lowe:   I was attorney for Mr. Blackburn, and any appearance I have heretofore made or at the present time is not in any way for the heirs.

"Mr. Allen:   There is no separation of counsel in the pleadings.

"The Court:   If it should appear during the trial of this case that the interests of this party are not involved in the general issues here, and that special representation other than Mr. Lowe is needed in this case, the court, perhaps, will make a different order, but until that time appears the order of this court will stand as heretofore made.

"Mr. B. H. Jones:   I should like to make this showing to your honor before I am disbarred in this case.   I represent all of the children, and have represented them (all of the children) throughout the entire proceedings, and Brother Lowe and Brother Foxley at one time represented the executor.   Alice and William were impecunious and it was necessary that I represent them because they were unable to obtain counsel.   I am a member of the bar of the Supreme Court of this state and of the United States, and there has never been any order entered in this court disbarring me, and I ask the privilege of representing them (the children) in this case.

"The Court:   Mr. Jones, would you mind allowing the counsel on the other side to proceed this morning, and the court will look up the record in this matter."

So far as the record shows, no further order was made respecting counsel for the heirs.   The heirs had appeared in the action in response to an order of the court.   The case proceeded to judgment against the executor and these heirs without any counsel being present in court representing them with the exception of B. H. Jones.   The ruling of the court is assigned as error.

The record in this case presents a most unusual, if not to say extraordinary, state of facts.   The deceased made a will in 1910.   It is stated therein that at that time she was 70 years of age.   She died in the latter part of 1916.   The will, after making certain bequests to different children, directs that all the other property shall go to her children, share and share alike.   After the death of Mrs. Burt her will was admitted to probate and Thomas H. Blackburn was con-

firmed as executor. During the lifetime of the deceased she, either in person or by tenant, occupied the property in question, consisting of two separate pieces. She executed leases on the property in her own name, collected the rents, paid the taxes thereon, and in every respect exercised all the prerogatives of ownership. It is also apparent from the testimony in the record, in addition to the terms of the will, that it was the desire of the deceased that her children should share equally in whatever she possessed at the time of her death. Some seven months after the death of the deceased, respondent, defendant below, placed on record a deed purporting to have been executed conveying to him one of the pieces of property involved in this action. About the same time a deed was recorded purporting to have been executed by the deceased conveying the remaining real property to another son. A deed from that son to the respondent was also produced. The respondent claims the property under these deeds. The original deeds are not in the record; nor are the originals of any of the exhibits. The deed from the deceased to the respondent of what is known as the "Main street" property bears date some five years before the death of the deceased. The property included in the deed constitutes the most valuable part of the estate of the deceased. It also appears that about the dates these respective deeds were supposed to have been executed the respondent executed a lease on the premises included in the conveyance to him giving to his mother a life tenancy. That lease was recorded prior to the death of the deceased. It also appears that the other son, Esdras H. Jones, executed a lease to his mother for the term of her life for the premises conveyed to him. Whether the mother had any personal knowledge of these leases does not satisfactorily appear from the evidence. It is also a significant fact, as stated in the memorandum decision of Judge Agee, that the respondent, in the first answer filed in this action, did not set up or make any statement respecting a deed held by him from his mother, but based his claim to the property on the fact that his mother held a lease from him, and that she and her estate would be estopped

to deny his title. That original answer does not, however, seem to be in the record.

It is a mere truism to say that under such a state of facts a court of equity will scrutinize with jealous care any claim made by respondent, and the burden will be upon him to satisfactorily explain that the conveyance was made either as a gift or for a valuable consideration. The decree quieting the title to the premises in the respondent to all intents and purposes would give the respondent the entire estate left by his mother. It can readily be seen, therefore, that the interest of the remaining heirs would be vitally affected by a decree entered in this proceeding, and they were entitled, if they so elected, to be represented by counsel especially charged with the duty of looking after their interest and presenting to the court such facts and legal arguments in support of their claims as such counsel should think advisable.

We are therefore of the opinion that the order of the court refusing to permit B. Howell Jones to represent these heirs as an attorney was prejudicial error unless at the same time an opportunity was given these claimants to employ other counsel. If in the orderly procedure of the court it was found necessary or deemed advisable that these claimants should be represented by other counsel, it was the duty of the court to so advise, and they should have been given the opportunity of employing additional counsel.

This record is burdened with many motions, affidavits, counter affidavits and objections. Upon a retrial the court can ignore these motions, take the issues as made by the pleadings, and proceed to hear the testimony and determine the matter in an orderly and regular way.

The judgment of the district court is reversed, and a new trial granted. Neither party will be allowed costs on this appeal.

CORFMAN, C. J., and WEBER and THURMAN, JJ., concur.

FRICK, J. I dissent. This is an action to quiet title to

certain real estate in Box Elder county. The action was commenced by one Thomas H. Blackburn ''as the executor of the estate of Ann H. Burt, deceased, against Ricy H. Jones and others. It was, however, dismissed as to the other defendants before trial. The case was tried twice. The first trial was had before Hon. A. W. Agee, who, after making findings and entering judgment in favor of the plaintiff, set aside his findings and judgment and granted a new trial. After a new trial was granted Thomas H. Blackburn resigned as executor, and Charles E. Foxley was duly appointed his successor, and the latter is now the acting executor of the said estate. A second trial was had before Hon. Wilson McCarthy, who, after hearing the evidence, made findings of fact and conclusions of law and entered judgment in favor of the defendant and quieted the title to the premises in dispute in him. The present executor appeals from the judgment.

It will be observed that the judgment is reversed upon the sole ground that the district court erred in not permitting B. Howell Jones, who claims that he represented himself and the other heirs at law of the deceased, to take an active part in the trial. As before stated, the action is one to quiet title to certain real estate in an estate, and is therefore purely equitable. The judgment is, however, reversed for a mere technical error, and upon the theory that it is an action at law. In actions in equity it is the duty of this court to dispose of the case upon the merits, and upon the record presented, and if, upon a full consideration of the whole record, this court is satisfied that the trial court erred in its findings or has erred in granting relief, this court is then required to make or to direct findings in accordance with the evidence, and to enter or direct a judgment or decree to be entered accordingly. This court is not permitted to merely reverse judgments in equity cases, and to remand the cases for new trials, but is required to finally dispose of such cases upon the record, unless for want of evidence which should have been admitted and certified up such cannot be done, and

then the cases are remanded only for the purpose of supplying any defect in that respect.

This case should therefore be disposed of upon the merits. It it should be found, however, that the findings are not sustained by the evidence, or that the conclusions of law and judgment are contrary to law, this court should nevertheless make or direct proper findings to be made, and should either enter or require judgment to be entered accordingly.

I have carefully read all of the evidence as the same is preserved and certified in the bill of exceptions. No good whatever could be subserved by attempting to set it out either in detail or in substance to demonstrate the correctness of the court's findings of fact. If it were held, however, that the testimony does not support the findings, this judgment should, nevertheless, not be reversed for the reasons stated in the prevailing opinion. Under our statute (Comp. Laws Utah 1917, §§ 6495 and 7220) the heirs are not necessary parties to an action to quiet title unless they claim some interest in the subject-matter of the action adverse to the estate. In *Farnsworth* v. *Hatch*, 47 Utah, 62, 151 Pac. 537, we held that the heirs were represented by the administrator or executor, as the case may be, and that they were bound by any judgment entered in such action either in favor of or against the executor. In the case at bar, however, the heirs, including B. Howell Jones, were not only not necessary parties to this action, but after they were made parties they at once appeared and disclaimed all interest adverse to the estate. The record discloses that the heirs of Ann H. Burt, deceased, other than the defendant, appeared by B. Howell Jones as their attorney, and that—

"They and each of them disclaimed any right or title to the rents or profits or to its possession adverse to said Thomas H. Blackburn as executor aforesaid. * * * They and each of them disclaim and set up no right, claim or title whatsoever."

It is further made to appear in said disclaimer that each of the heirs aforesaid claim only as heirs of the deceased, and that they claim nothing against said executor, and that their claims and the claims of each of them are merely as heirs

at law of said deceased. They were therefore represented by the executor and by his attorneys who appeared in the case. If it were held, however, that, notwithstanding their disclaimers, ordinarily the heirs nevertheless had a right to be independently represented by an attorney of their own choice, yet in this case no such claim can be preferred, (1) because in the disclaimer it is expressly alleged that they directed the executor to bring the action in his name for their benefit, and (2) because it is not made to appear that independent representation was necessary for any purpose. Indeed, the record is loaded with facts and circumstances from which it is apparent that the district court acted wisely in requiring the heirs, as well as the defendant Ricy H. Jones, to be heard through their respective attorneys—that is, the heirs other than Ricy H. Jones to be heard through the attorneys representing the executor and that he be heard through his attorney. The record teems with criminations and recriminations on the part of Ricy H. and B. Howell Jones. Moreover, at the hearing in this court it was made apparent that the antagonistic feelings of the two brothers was such that they constantly had to be admonished to confine themselves to the law and the facts, and to desist from personalities. The record, however, also shows that B. Howell Jones testified as a witness in the case, and that he was the principal witness in his own behalf and on behalf of his coclaimants; that his statements constitute a little more than 25 per cent. of the whole evidence, and that at the trial he again in open court, both for himself and for the other heirs except the defendant, disclaimed all interest in and to the estate except such as was represented by the executor and his attorneys. In addition to all that there is not a word or a syllable anywhere in this record tending to show that the heirs were in any way prejudiced by the court's rulings. If, therefore, this were tried merely as a law case, this court, in view of the record, would not be authorized to reverse the judgment for the reasons stated in the prevailing opinion.

There is, however, another reason why this court should not reverse the findings and judgment of the district court

in this case. At the trial the defendant, in addition to much oral and documentary evidence, offered in evidence the depositions of two witnesses. All that is made to appear in the bill of exceptions and in the minutes of the court in respect to these depositions is that the district court admitted the deposition of Dr. Brown in evidence, "whereupon Mr. Allen (attorney for defendant) reads the deposition of Dr. Brown." As to the other deposition, the record reads: "Whereupon Mr. Allen reads the above deposition." In addition, therefore, to the evidence produced on behalf of the defendant, which is in the bill of exceptions, there were read in evidence the depositions of the two witnesses who testified on defendant's behalf, and which were considered by the district court, but which are entirely omitted from the record in this court. If there were nothing else than that omission this court should not interfere with the judgment.

If, however, this court desires to interfere in this case, it should take the responsibility of doing so upon the whole record as it is presented and should dispose of the case upon its merits. The testimony of several disinterested witnesses shows that the deceased, many years before her death, made two deeds in which she conveyed the premises in question. In one of the deeds the defendant, Ricy H. Jones, is the grantee, and in the other his brother Esdras was the grantee. Esdras afterwards conveyed to Ricy H. Jones, and the latter paid the purchase price to the mother. The deceased, after making the two deeds, took a life lease from each one of the brothers, which life lease, the testimony shows, was by her duly recorded and the recorded instruments returned to her several years before her death. The evidence from disinterested witnesses also shows that the defendant, Ricy H. Jones, paid to the deceased the full consideration mentioned in the deeds for the premises, but did not record the deeds until after the death of his mother, the deceased. In view of this evidence, coming from disinterested witnesses who testified that they were present when the mother made the deeds and the life leases, and that she had the life leases in which she was the lessee recorded several yars before her

death, that she had received the full consideration for which she had sold the premises, it is indeed difficult for me to understand how the trial court could have found otherwise than it did.

Nor can I see how the court committed reversible error in insisting upon the orderly conduct of the trial by compelling the two brothers, who were constantly in conflict, to be heard through their attorneys. If that ruling was prejudicial it should at least be made to appear to have been so. I am utterly unable to understand how, under our statute, an heir can come into this court and have a judgment reversed merely because he was not permitted to personally take part in trying a case to which he was not a necessary party, and where he was represented by the attorneys of the executor through whom he claims, without at least showing that he suffered some prejudice. This is especially true where, as here, the attorney who is complaining was the principal witness in the case on behalf of the estate, and where he always knew he would be a witness. The usual rule is that, where an attorney knows he will be called as a witness on the principal issues in a case, he should cease from acting as such attorney in the case. 1 Thornton on Attorneys at Law, § 331. Indeed, it is one of the canons of ethics of the American Bar Association. Archer, Ethical Obligations of the Lawyer. § 123. Here, however, an equity case is reversed which, in my judgment, is clearly decided right upon the evidence upon the sole ground that an attorney who was one of the principal witnesses in the case on his own behalf and on behalf of his coclaimants was not permitted to take an active part as an attorney in trying the case, and this, too, without any showing of prejudice, I most respectfully submit that such a result is not in accord with either principle or reason.

Again, as appears from the colloquy between the court and Mr. Jones who now complains, the court did not make a positive order denying him the right to be personally heard. What the court said indicates this. It said, ''Mr. Jones would you mind allowing the counsel on the other side to proceed this morning and the court will look up this mat-

ter?" In that suggestion, so far as the record shows, Mr. Jones acquiesced until he came into this court. It would seem that, in view that he became one of the principal witnesses in the case, the court at least ought not to be convicted of error merely because it preferred to have the other counsel conduct the case and make the arguments.

Moreover, the district judge saw and heard all that transpired, heard and saw the witnesses, and was thus in a better position to judge of the weight that should be given to their statements than we are, and, unless it is made to appear from the record that his findings are clearly against the evidence, under the repeated rulings of this court they should prevail. Nor should the judgment be reversed upon a mere technicality.

As before stated, upon the record the findings are not only amply justified, but, in my judgment, are clearly in accordance with the weight of the evidence. The judgment should therefore be affirmed.