No. 47,496

In re Estate of Walter A. Keimig, Deceased. (RUTH ANN HUSS, *Appellant*, v. GOLDIE KEIMIG, Executrix, *Appellee*.)

(528 P. 2d 1228)

Opinion filed December 7, 1974.

*Joe A. Moore*, of Memphis, Tenn., argued the cause and *Jack B. Sellers*, of Sapulpa, Okla., was on the briefs for the appellant. *Ralph E. Skoog*, Topeka, of counsel.

*Robert D. Caplinger*, of Stillings, Caplinger and Brady, Chartered, of Atchison, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is an appeal from a judgment denying the claim of an alleged common law wife to her purported husband's estate.

The plaintiff-appellant, Ruth Ann Huss, was first married in 1920 to Joseph Cavanaugh. A daughter was born as a result of this marriage. In 1922 appellant secured a divorce from Mr. Cavanaugh.

In 1925 appellant was married in Kansas City, Kansas, to Walter A. Keimig, the decedent whose estate she now claims. Eventually marital difficulties developed between appellant and Walter and they started living apart. Appellant filed suit for divorce in Atchison county, Kansas, and obtained it March 21, 1935. That evening Walter went to appellant to discuss their situation. They decided

to forgive and forget and go back together again. The couple spent the night together at plaintiff's father's home. The next day they returned to the same home in which they had resided prior to the separation and divorce.

After the reconciliation the couple held each other out as man and wife for the next nine years. During this time they resided in Shannon in Atchison county, Kansas, where Walter farmed extensively and conducted a farm equipment business. Appellant helped in this latter business and also carried out domestic tasks including cooking for the hired help and caring for Walter's father who lived with them. She signed her name as Mrs. Keimig; Walter introduced her as Mrs. Walter Keimig or "my wife"; she was known by Walter's employees as Mrs. Keimig; when appellant's daughter married in 1938, the nuptial announcements were made by "Mr. and Mrs. Walter Keimig".

In the spring of 1944 appellant made out a check to herself for $500.00, cashed it, left decedent and went to Plainville, Kansas. There she joined Albert Huss, a former farm employee of Walter. A short while thereafter she returned to Walter at Shannon for about a week, then departed again and went to Great Bend, Kansas, where she commenced living with Albert Huss. Appellant worked for a while in Great Bend, using the name Cavanaugh. She lived with Mr. Huss in several western Kansas towns and eventually began using the name Huss. As time passed she and Mr. Huss acquired real estate in the names of Albert and Ruth Huss, husband and wife; their insurance was carried in the same way; appellant was listed in the census record as Ruth Huss; she received her driver's license and was assessed for personal property under that name; Huss named her as his wife in a deed conveying to her his interest in realty; she signed mortgages under the name of Ruth Huss. In 1954 appellant filed suit in Barton county, Kansas, for divorce from Albert Huss. Later she had this action dismissed on the ground she and Albert had reconciled their marital differences. Upon reaching the requisite ages Huss and appellant applied for and received social security benefits as husband and wife. Appellant lived continuously with Mr. Huss and on January 13, 1972—which was subsequent to Walter Keimig's death—they were formally married in a ceremony at Stillwater, Oklahoma.

Meanwhile, Walter Keimig dated other women. In 1962 he and defendant-appellee Goldie Keimig, then Goldie Sherrer, started

living together at the Keimig home in Doniphan county. On July 20, 1967, Walter and appellee Goldie were married in a civil ceremony at Miami, Oklahoma. Walter told appellee he was divorced, single and free to marry. Prior to his marriage to Goldie, Walter executed documents conveying interests in realty in which he was described as an unmarried man. On March 26, 1970, Walter executed his last will which provided:

"I give, devise and bequeath all of my property, real, personal and mixed, and wheresoever situated unto my beloved wife, Goldie Keimig."

In a prior will executed in 1946 in which he referred to himself as unmarried, he had directed that all his property should go to his brother Philip Keimig.

On June 21, 1971, Walter died in Ray county, Missouri, where he and appellee were then living. On June 29, 1971, upon appellee's petition the probate court of Doniphan county, Kansas, admitted Walter's last will to probate and appointed her as his executrix. On December 29, 1971, appellant, using the name of Ruth Ann Keimig, petitioned the probate court for an order extending the statutory period of time for a surviving spouse to file an election. The probate court granted a thirty day extension.

On January 25, 1972, twelve days after her ceremonial marriage to Albert Huss, appellant filed an election to take under the law, alleging she was Walter's surviving spouse and sole heir at law. An evidentiary hearing was held upon this election. The probate court ruled against appellant on the ground she was not Walter's legal wife at the time of his death. Appellant appealed to the district court of Doniphan county where the matter was heard anew. That court likewise ruled against appellant. After making certain factual findings it held:

"17. That Claimant has failed to show the establishment of a common law marriage with Walter A. Keimig subsequent to their divorce, in that Claimant did not show a marriage agreement in addition to an agreement to cohabit.

"18. The claimant has failed to overcome the presumption of the validity of a subsequent marriage of Walter A. Keimig and Goldie Sherrer."

Appellant's motion for new trial was denied and the present appeal ensued.

Essentially appellant's points on appeal as to the trial court's first finding are embraced in the assertion the trial court erred under all the evidence in failing to find appellant was the common law wife of Walter Keimig at the time of his death. She urges that Walter

was rendered incapable of contracting marriage with appellee by reason of the fact appellant remained his legal spouse.

Kansas has long recognized the validity of common law marriage, the essential elements of which are: (1) A capacity of the parties to marry; (2) a present marriage agreement betwen the parties; and (3) a holding out of each other as husband and wife to the public (*Schrader v. Schrader*, 207 Kan. 349, 484 P. 2d 1007). Common law marriages between persons previously divorced from each other have been considered judicially in other states. It is generally held, and we think correctly so, that the same tests and standards used in determining whether persons with no previous matrimonial history have entered into a common law marriage are to be applied in determining whether a common law remarriage exists between divorced spouses (see anno., 82 A. L. R. 2d 688; also *Cable v. Brotherhood of Railroad Trainmen*, 150 Kan. 242, 92 P. 2d 81). This does not mean the fact of the previous marriage and divorce is to be removed from consideration or placed in a vacuum apart from other facts in the case.

The district court here specifically found appellant had failed to show the establishment of a common law marriage with Keimig in that she did not show a marriage agreement in addition to consent to cohabit.

In *Schrader v. Schrader*, supra, we emphasized:

"Our law . . . is very clear that an indispensable constituent of a common-law marriage is the existence of a present marriage agreement." (p. 351.)

And in *In re Estate of Freeman*, 171 Kan. 211, 231 P. 2d 261, we said:

"In order to constitute a valid common law marriage there must also be a present marriage agreement rather than an agreement to be married in the future and a holding out of each other to the public as husband and wife." (p. 213.)

However, the present marriage agreement need not be in any particular form (*Cain v. Cain*, 160 Kan. 672, 676, 165 P. 2d 221).

We have already summarized the testimony respecting the resumption of cohabitation between appellant and Walter following their divorce and there is no question a holding out as man and wife was shown. The whole evidence concerning what occurred when Walter went to see appellant at her father's home on the evening the divorce was granted is disclosed by the testimony of appellant as follows:

"Q. All right, during the course of the evening in connection with your discussion about your marriage problems, tell us please what you said and what he said as nearly as you recall about this divorce and about the marriage?

"A. Well, we decided we never had no divorce, we just went back as we always had been when we first got married.

"Q. And during the course of that evening did you have any discussion forgiving one another about what had gone on?

. . . . . . . . . . . . .

"A. Yes.

"Q. You say yes?

"A. Yes.

"Q. And what were those discussions, what did you say and what did he say as near as you recall about the things that had been, that bothered you before?

"A. We were going to forget them and go back and live as we should have lived."

Although the evidence revealed a considerable period of living together as man and wife we cannot say the trial court was compelled or required by it or by all the evidence to find that appellant and Walter actually contemplated or entered into a new agreement to become husband and wife at the critical time in question. They did not say so and, aside from their holding out, their subsequent conduct belied the fact. They may have considered remarriage in the future if and when that became mutually agreeable. Each definitely considered himself single for a period of time after their twice repeated separation and each became interested in new marital partners to the extent of a long time holding out by appellant as the wife of another, of whom she sought formal riddance by divorce, and of a ceremonial marriage by Walter. It appears it was only some time after Walter's death that appellant perceived herself as his widow. By coincidence she was in Atchison, Kansas, visiting her granddaughter at the time of Walter's death. She learned of his death then but did nothing about the funeral nor did she attend it. At that time she made no inquiry about Walter's estate and did nothing until after her daughter contacted her. Her testimony was she did not want Walter's not inconsiderable estate for herself—she wanted to give it to her daughter and to Walter's brother Philip, who appeared as a witness in support of her cause. Appellant's inconsistency in her marital positions was such as to render her entire testimony suspect. The most that can be said in her favor is that a factual issue was presented by reason of differing interpretations which could be placed upon all the evidence and the trial court after hearing it resolved any conflict by finding there

was no present marriage agreement when appellant and Walter resumed cohabitation. We simply cannot say there was no substantial evidence in support thereof and the finding must be approved.

Having reached the foregoing conclusion it becomes unnecessary to consider whether the trial court correctly found that appellant had failed to overcome the presumption of the validity of Walter's subsequent marriage to appellee.

The judgment is affirmed.

APPROVED BY THE COURT.