No. 47,543

STATE OF KANSAS, *Appellee*, v. EARL W. JOHNSON, JR., *Appellant*.

(532 P. 2d 1325)

Opinion filed March 1, 1975.

*Mikel L. Stout,* of Wichita, argued the cause and was on the brief for appellant.

*Clifford L. Bertholf,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, *Keith Sanborn,* district attorney, *Stephen M. Joseph,* assistant district attorney, and *Martin W. Baver,* of Wichita, were with him on the brief for appellee.

The opinion of the court was delivered by

FATZER, C. J.: This is an appeal by the defendant from a conviction for aggravated robbery (K. S. A. 21-3427) and unlawful possession of a firearm (K. S. A. 21-4204). The pertinent facts are as follows:

In the early morning hours of February 5, 1973, the defendant, Earl Johnson, Jr., arrived at the Clifton Manor Motel in Wichita, and rang the late registration bell. Upon being awakened, the night clerk, Eupha Jill Empson, opened the front door and admitted the defendant into the motel's office. The defendant registered and paid for his room in cash. Mrs. Empson secured a bank bag containing prior receipts from a drawer in the office desk, tendered to the defendant his change and a receipt, and placed the bank bag back on the office desk drawer. The bank bag was blue in color and had a zippered opening.

The defendant then pulled a gun on Mrs. Empson and demanded to see the motel register. He told her he was not going to rob her,

but he believed his wife was in a room with another man. After reading the register and tearing out the page on which he had registered, Johnson asked Mrs. Empson if anyone was in the back room, and threatened to kill her if she lied. Mrs. Empson informed Johnson that no one was in the room. Johnson forced her into the back room and immediately checked it for other occupants. A few moments later, Johnson told Mrs. Empson that he was going to put her to sleep and began choking her until she lapsed into a state of unconsciousness. When she regained consciousness she discovered, much to her surprise, that Johnson was still there. Johnson then forced her into a bathroom and threatened to kill her if she opened the door. Mrs. Empson complied and sometime later when she ventured out she found the front door of the motel open and Johnson was gone. She immediately telephoned her daughter and the police. After the police arrived, and during the course of their investigation, Mrs. Empson discovered the bank bag was missing.

Thereafter, the defendant was arrested and charged with aggravated robbery and unlawful possession of a firearm. Johnson entered a plea of not guilty to both counts and the matter came on for trial to a jury on May 7, 1973. Immediately before his trial, the defendant offered a written and signed admission to the court. In that admission, the defendant acknowledged having been convicted of a felony within five years of the offenses he was charged with in this action. Counsel for the defendant then moved the court to limit the prosecution's evidence by not allowing the state to introduce evidence of the defendant's prior convictions of forcible rape and second degree kidnapping. The prosecution objected to the defendant's motion *in limine*. The district court overruled defendant's motion.

During the trial, the state called Mrs. Empson as a witness. She identified the defendant as the one who had robbed the motel on the morning of February 5. On cross-examination she testified that she had not seen the defendant or anyone else take the blue bank bag.

The prosecution also called Joann Williams as a witness. At the time she was called to take the stand, the defendant objected to her testifying on the ground she was his common-law wife and he was invoking the marital privilege. The jury was excused and the witness examined. Miss Williams testified her mother had wanted her to marry the defendant; that she had lived with him off and on for seven months; that they had lived together continuously for the

last two months prior to February 12, 1973, when the defendant was arrested; that some people knew they were living together without having gone through a marriage ceremony, while others thought they were legally married; that the defendant had purchased her food, clothing, and shelter while she was living with him. She further testified she had never signed her name as Mrs. Earl Johnson; that a marriage license was never obtained; that prior to the defendant's criminal activities she intended to go through a marriage ceremony with the defendant at some future date; that after the motel robbery she no longer intended to marry him, and that she and the defendant had referred to each other as husband and wife in the presence of defendant's employer and their landlady. Joann Williams was fourteen years old at the time the Clifton Manor Motel was robbed. Following this testimony, the district court found no common-law marriage relation existed and allowed Miss Williams to testify.

Miss Williams then testified she had accompanied the defendant to the Clifton Manor Motel on the night of the robbery and had waited for him in the restroom. She stated the defendant had informed her of his intent to rob the motel prior to the robbery. Miss Williams also saw a .22 caliber revolver in Johnson's possession. After the robbery, Johnson and Miss Williams left the motel in a taxi and went to the home of Johnson's sister. There, according to Miss Williams, Johnson gave her a blue bank bag and told her to count the money in it. She counted the money and gave it back to Johnson. According to Miss William's recollection, she counted approximately $200.

The prosecution's last witness was Detective Joseph R. Thomas. After calling this witness, the prosecution requested the district court take judicial notice of a prior case—the complete record of the defendant's prior felony convictions. The district court took judicial notice of the file and the state asked the witness to examine the file and inform the jury of the nature of the defendant's prior convictions. Counsel for the defendant objected to the procedure, but the court overruled the objection. Detective Thomas was permitted to testify that the defendant had been previously convicted of kidnapping and rape.

At the conclusion of the two-day trial, the jury returned a verdict finding the defendant guilty of both counts. The defendant was sentenced to the state penal institution for a period of not less than fifteen years nor more than life on the charge of aggravated rob-

bery (K. S. A. 21-3427; 21-4501 [*b*]), and for a period of not less than three nor more than ten years on the charge of unlawful possession of a firearm. (K. S. A. 21-4204 [1] [*b*]; 21-4501 [*d*].) Both sentences were ordered to run concurrently. The defendant duly perfected this appeal.

The appellant contends the district court erred in allowing the prosecution to introduce the nature of his prior felony convictions in light of his admission of those prior convictions, and that such evidence was highly prejudicial to him. This contention relates to the charge of unlawful possession of a firearm. The relevant statute, K. S. A. 21-4204 (1) (*b*), reads:

"Possession of a firearm with a barrel less than twelve (12) inches long by a person who, within five (5) years preceding such violation has been convicted of a felony under the laws of Kansas or any other jurisdiction or has been released from imprisonment for a felony."

We are of the opinion the appellant's contention cannot be sustained. It is an established rule of law that an admission by a defendant does not prevent the state from presenting separate and independent proof of the fact admitted. (*State v. Wilson*, 215 Kan. 28, 523 P. 2d 337; Wharton's Criminal Evidence [12th ed. 1972 Cum. Supp.], Confession and Admission, § 399.) Clearly, the state has the right to prove the prior convictions by other independent evidence. (*State v. Campbell*, 210 Kan. 265, 500 P. 2d 21.) The statute, K. S. A. 21-4204 (1) (*b*) requires the state prove the defendant had a firearm with a barrel less than twelve inches in his possession, and that the defendant had been convicted of a *felony* within five years preceding the violation. We find no merit in defendant's claim of prejudicial error.

The appellant next contends the district court erred in allowing Joann Williams to testify, contending she was the common-law wife of the defendant and he had claimed the marital privilege to exclude her testimony. In Kansas the three requirements which must coexist to establish a common-law marriage are as follows: (1) A capacity to marry; (2) a present marriage agreement, and (3) a holding out of each other as husband and wife to the public. (*Gillaspie v. Blair Construction Co.*, 192 Kan. 455, 388 P. 2d 647; *Schrader v. Schrader*, 207 Kan. 349, 484 P. 2d 1007.)

The common law sets the ages of consent to be fourteen for the male and twelve for the female. In *Browning v. Browning*, 89 Kan. 98, 130 Pac. 852, the plaintiff sued for an annulment on the ground that he was a minor when he married and that he had not received

the consent of his parents. Regarding this argument, this court said:

". . . In forbidding the issuance of a license for the marriage of a minor without the consent of the parent or guardian the legislature is to be regarded, for the reasons already indicated, as intending to prevent minors from the improvident exercise of the power to enter the marriage relation, rather than to deprive them of the capacity to do so. . . ." (l. c. 101.)

In the case at bar, Joann Williams was fourteen years of age when she and the defendant began cohabiting together, and, therefore had the capacity to form a common-law marriage.

The second requirement necessary for the establishment of a common-law marriage is a present marriage agreement. Regarding this requirement, in the case of *In re Estate of Freeman*, 171 Kan. 211, 231 P. 2d 261, it was said:

". . . In order to constitute a valid common law marriage there must also be a present marriage agreement rather than an agreement to be married in the future. . . ." (l. c. 213.)

While the present marriage agreement need not be in any particular form (*Cain v. Cain*, 160 Kan. 672, 676, 165 P. 2d 221; *In re Estate of Keimig*, 215 Kan. 869, 872, 528 P. 2d 1228) it is essential that each have a mutual present consent to the marriage. (*Pitney v. Pitney*, 151 Kan. 848, 101 P. 2d 933; *Schrader v. Schrader*, supra.) If a common-law marriage posture is assumed, a subsequent intent to no longer be married, in and of itself, does not nullify that posture.

The final requirement of common-law marriage is a holding out of each other as husband and wife to the public. Here, Miss Williams testified that she never signed her name as Mrs. Earl Johnson. The parties held themselves out as husband and wife only to the defendant's employer and their landlady. As to the public in general, there was some substantial question as to the relationship between the parties. Moreover, when the appellant was questioned by a Wichita Police Officer he stated he had registered under fictitious name because he was staying there with his *girl friend* whom he identified as Joann Williams. It thus appears Joann Williams and the appellant held themselves out to be man and wife only when it was advantageous to assume a marriage posture. Lacking the requirement of holding out of each other as husband and wife to the public, there was no common-law marriage, and the claim of marital privilege is without merit.

The appellant next contends the district court committed re-

versible error in not granting a mistrial after a question was asked by the prosecutor. The contention relates to a question asked Joann Williams on redirect examination. Regarding this point, the record shows the following:

"Q. All right. Had you known about any other robberies that Mr. Johnson had done?

"A. Well—

"THE COURT: Just a minute. Approach the bench.

"MR. STOUT: I move for mistrial—no, I move for mistrial.

"THE COURT: Just a minute.

"MR. STOUT: Your Honor—

"THE COURT: Approach the bench. No more."

Thereafter, the district court excused the jury and heard argument on defendant's motion for a mistrial. The court sustained defendant's objection to the question, but denied the motion for mistrial. The next morning the court instructed the jury as follows:

". . . The objection to the last question at the close of the session yesterday is sustained, and the jury is instructed to disregard any answer, if there was one given. I'm not sure a complete answer was given."

The district court's admonishment was clear, and under all the circumstances we find no prejudice to the defendant.

Appellant lastly contends the district court erred in failing to instruct on the lesser included offense. Appellant argues the court should have given the jury instructions on the crime of aggravated assault, aggravated battery, and battery. Where the crime charged may include some lesser crime, it is the duty of the court to instruct the jury, not only as to the crime charged but as to all lesser offenses of which the accused might be found guilty under the information and upon which evidence was adduced, even though such instructions were neither requested nor objected to. (K. S. A. 21-3107 [3]; *State v. Harris*, 215 Kan. 961, 529 P. 2d 101.) The appellant was charged by information with having committed aggravated robbery and unlawful possession of a firearm. Here, the evidence indicated commission of the offense of aggravated robbery by someone. That is, whoever committed the assault and battery also stole the money. The real issue was whether defendant was the perpetrator. Under those circumstances it was not necessary to instruct on the lesser offenses.

The judgment is affirmed.