No. 47,954

RICHARD O. DRISCOLL, *Appellant*, v. ROBIN L. (ANDERSON) DRISCOLL, *Appellee.*

(552 P. 2d 629)

Opinion filed July 23, 1976.

*Ray Hodge,* of Hodge, Wood and Wilson, of Wichita, argued the cause and was on the brief for the appellant.

*James G. Beasley,* of Fettis, Quinn and Beasley, of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: In this purported divorce action appeal is from an order finding no common law marriage existed between the parties and from an order refusing a hearing on a putative father's request for custody of a minor child allegedly born of the parties' relationship.

Appellant Richard O. Driscoll commenced the proceeding by filing a petition naming Robin L. Driscoll as his common law wife and seeking divorce from her and custody of a minor child, Tisha Jean, born to appellee during the existence of the marriage. Appellee responded in an answer and cross-petition in which she named herself Robin L. Anderson. She denied everything except

residence of the parties and the fact a daughter, Tisha Jean Anderson, had been born to her. She expressly denied the existence of a common law marriage but she asked for divorce, alimony, custody and support money in event the court found there was such a marriage. Trial was had with the result stated and this appeal ensued.

Appellant's first point on appeal is tantamount to an assertion there was insufficient evidence to support its finding the parties had not entered into a common law marriage. In view of the fact the trial court in its findings alluded to matters not contained in the record on appeal we have secured a transcript of the proceedings. We summarize its contents.

Appellant, who was thirty-six years of age at the time of trial, gave the following testimony: He and appellee had been living together at an apartment in Wichita for about three or four weeks; appellee was then eighteen years old; some time in June, 1972, he had a conversation with her respecting marriage; just the two of them were present; he said, "Are you my old lady?"; she responded, "Well, I guess, if you want to put it that way", and they thereby considered themselves married; afterward he put a set of wedding and engagement rings on the third finger of her left hand; she wore the rings; later she introduced him to people as "my old man" and he referred to her as "my old lady"; on one occasion appellant introduced himself and appellee as husband and wife to a prospective landlady (this testimony was substantiated by a friend of appellant who was present at the time); after Tisha Jean was born appellee sent out birth announcements in her handwriting showing herself and appellant as parents of the child; appellee represented appellant as her husband to hospital personnel so he could see Tisha Jean in the incubator room. Appellant further testified that after they were married they at times would "split up" for a period; appellee had an apartment in her own name; it was a "time of turmoil" and they resided together about one-half of the eighteen month period; the last time they "split" was in December, 1973; Tisha Jean's confinement expense was paid by welfare; he had previously given appellee some money but she hadn't used it for the baby; appellant filed income tax returns as a single person for the years 1972 and 1973.

Appellee testified she began living with appellant June 30, 1972, for a period of about three months; in September she suggested marriage when she learned she was pregnant; appellant

said he had no intention of getting married and he accused another man with whom appellee had previously lived of being responsible for the pregnancy; he threw her and her belongings out; the conversation testified to by appellant respecting the agreement to be married never occurred; he never agreed to be married although later after the child was born he talked about it; she didn't want to get married then; appellant's only talk of marriage referred to future plans so they would be a family and the child would be legally his; the rings appellant gave her were not bought for her as he already had them; she wore them while pregnant to avoid embarrassment and not to signify marriage; she made no representation appellant was her husband; when appellant introduced her to a prospective landlady as his old lady her failure to speak up in objection was to avoid embarrassment for anyone; she never called him "my old man" but referred to him as her boy friend; she did not write out any birth announcements; a girl friend brought a box of printed blank form announcements as a gift to her in the hospital; with her consent the girl friend filled them out, kept one and gave one each to appellant and appellee; none was mailed or delivered to anyone else; during their separations each dated other persons and had different roommates; while apart she paid rent on her apartment under the name Anderson. A social worker who assisted appellee and was familiar with her welfare records testified appellee always used the name Anderson for herself and Tisha Jean.

The essential elements of a common law marriage are: (1) Capacity of the parties to marry; (2) a present marriage agreement between the parties; and (3) a holding out of each other as husband and wife to the public (*In re Estate of Keimig*, 215 Kan. 869, 872, 528 P. 2d 1228). Although the marriage agreement need not be in any particular form, it is essential there be a present mutual consent to the marriage between the parties (*State v. Johnson*, 216 Kan. 445, 532 P. 2d 1325).

The burden of proving a common law or consensual marriage rests upon the party asserting it. Generally, the existence of such a marriage is a fact to be proved as other facts are (52 Am. Jur. 2d, Marriage, § 127, p. 978). Here the trial court found there was neither a present marriage agreement nor a public holding out as husband and wife. It goes without saying appellee's version of events supports both findings. She specifically denied the present

marriage agreement asserted by appellant and the holding out as well. These denials suffice to support a negative finding against the one having the burden of proof. The trial court did not act arbitrarily in reaching its conclusions. It manifestly regarded the sporadic cohabitation as a kind of liaison short of consensual marriage recognized by law. This was within its province and the findings may not be disturbed on appeal. We do not retry disputed factual issues.

After the trial court announced its decision that no common law marriage existed appellant stated that as the self-acknowledged father of an illegitimate child he desired to be heard under K. S. A. 1974 Supp. 60-1610 (a) on his right to custody of Tisha Jean. The court declined to conduct such hearing. Appellant now specifies this as error, adding he should be heard also on the issue of visitation rights. We cannot agree.

At the time it declined to conduct a custody hearing the trial court was aware of the pendency of an action in the juvenile court of Sedgwick county, initiated by appellant, to declare Tisha Jean a dependent and neglected child. Such action had not been determined but was being held in abeyance pending conclusion of the divorce proceeding. Thus the juvenile court had at appellant's instance already assumed jurisdiction of Tisha Jean in a dependency and neglect proceeding. With exceptions not here applicable this type of proceeding is by statute one within the original exclusive jurisdiction of the juvenile court (K. S. A. 38-806 [a] [1]) and where a juvenile court properly finds that a child is dependent and neglected its acquisition of jurisdiction precludes a district court from such jurisdiction as it might otherwise exercise over the custody of such child in a divorce action (*Trent v. Bellamy,* 164 Kan. 438, 190 P. 2d 400).

Moreover, there never had been any adjudication of Tisha Jean's paternity—the matter had not been made an issue in the divorce action although some of the evidence necessarily bore upon it. Substantial rights are to be determined in an orderly fashion in a proceeding wherein all pertinent issues can be litigated. Where a child's paternity is an issue provision should be made for the protection of the child's rights. Here no request for appointment of a guardian *ad litem* for the child was made and, of course, none was appointed. (Whether such appointment should be made would depend upon the assertions by the disputants and the possibility

of prejudice to the child's rights under the particular circumstances of the case.) The trial court did not abuse its discretion in denying a further hearing.

The judgment is affirmed.

APPROVED BY THE COURT.