Irene J. Fleming, *Appellee*, v. Frank M. Fleming, *Appellant*.

No. 48,103

(559 P. 2d 329)

Opinion filed January 22, 1977.

*B. L. Pringle*, of Topeka, argued the cause and was on the brief for appellant.

*Fred S. Jackson*, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

Fatzer, C. J.: This is an appeal from a judgment denying a motion to quash garnishment proceedings for the collection of past-due alimony and to terminate alimony granted in a previous divorce decree.

The basic facts which are not disputed follow: the appellee, Irene J. Fleming, was granted a divorce from the appellant, Frank M. Fleming, in 1969, and awarded alimony of $50 per week for one year and $30 per week thereafter until further order of the court. The payments were contingent on the death or remarriage of the appellee.

On February 26, 1974, the appellant filed a motion to terminate alimony payments, alleging that the appellee had remarried. A hearing was held and on April 9, 1974, the motion was denied. At the hearing, the appellant's sole contention was that the appellee had entered into a common-law marriage with Elmer Schlarman.

Subsequently, and on April 1, 1975, the appellant again filed a motion to terminate alimony, as well as a motion to quash a gar-

nishment order which had been issued to collect delinquent payments. He again alleged the appellee had entered into a common-law marriage with Elmer Schlarman. He also contended that if such a marriage was not found to exist, it was nonetheless contrary to public policy to continue to compel him to pay alimony when his former wife was openly cohabiting with another man.

On April 21, 1975, at the hearing on these motions, the court excluded all evidence as to a common-law marriage between the appellee and Schlarman which dealt with conduct prior to the April 9, 1974, hearing. The court stated its previous ruling was res judicata on such matters, and further ruled the appellant had failed to sustain his burden of proving that a common-law marriage existed. The court also ruled there was no law in the state which would dictate termination of alimony under the circumstances presented. The divorced husband has appealed.

We first turn to the appellant's contention the district court erred in concluding the evidence did not establish the existence of a common-law marriage.

In a long line of decisions, this court has laid down the basic constituents which constitute a common-law marriage. They are: first, a capacity of the parties to marry; second, a present marriage agreement between the parties which may be shown by circumstantial evidence; and third, a holding out to the public as their being husband and wife. (*See Pitney v. Pitney,* 151 Kan. 848, 101 P. 2d 933; *Gillaspie v. Blair Construction Co.,* 192 Kan. 455, 388 P. 2d 647; *Sullivan v. Sullivan,* 196 Kan. 705, 413 P. 2d 988; *Schrader v. Schrader,* 207 Kan. 349, 484 P. 2d 1007; and the most recent case, *In re Estate of Keimig,* 215 Kan. 869, 528 P. 2d 1228.)

It is not sufficient to prove one of these elements; they must all be established. In the instant case, there is no question as to the capacity of the parties to marry. However, a careful examination of the record discloses no present agreement to marry was established by the evidence, although there may have been evidence of consent to cohabit. In the absence of a present marriage agreement, it would serve no useful purpose to discuss the contention further. We conclude the district court did not err in finding that a common-law marriage was not established.

The appellant next contends the district court erred in prohibiting the appellant from establishing and relying upon the conduct of the appellee and Mr. Schlarman prior to the April 1974 hearing

as their conduct and admissions tended to establish a common-law marriage. There is little merit to the contention.

The district court found, and properly so, that the evidence was not sufficient to establish a common-law marriage. We have been cited no Kansas case, and we have found none touching upon the question whether the doctrine of res judicata should apply. Be that as it may, the court is of the opinion there is no logical reason why the doctrine of res judicata should not apply to actions to establish common-law marriages, the same as in any other action. All litigation must be brought to an end. The continued trial on the same issues and the same fact or facts which were established at a previous trial would make the courts a vehicle for harassment.

The appellant claims no discovery of new evidence during the period prior to April 1974. The testimony of the witnesses at the April 1974 hearing is set out in the record. A careful examination discloses no evidence which would tend to prove a present marriage agreement between the appellee and Mr. Schlarman. The restriction of the evidence could not therefore have prejudiced the rights of the appellant.

The appellant makes a final contention the district court erred in failing to find that public policy prohibited the appellee from continuing to receive alimony from the appellant while maintaining over a period of years a relationship with Mr. Schlarman wherein she received all the benefits of marriage when the decree of divorce provided for a cessation of alimony upon the appellee's remarriage.

It should first be suggested the appellee did not receive all of the benefits of marriage in her relationship with Mr. Schlarman because the very necessary element of support was lacking. There was no evidence of support nor was there evidence of a present agreement between the parties to be married, which would have constituted a common-law marriage and an implied legal obligation to support.

The appellant calls our attention to no cases which directly support his contention; however, he does quote from *Herzmark v. Herzmark*, 199 Kan. 48, 427 P. 2d 465, at page 54 where we state:

". . . It is distasteful to permit a divorced wife to hold both her former husband under a decree of alimony and her present husband under the marital duty of support which inheres in every marriage contract."

and again from the same page:

". . . It is a general principle in many courts that it is contrary to public policy for a woman to receive support from both a former and present husband."

We find no fault with the statements made above; however, here we are not dealing with a former and a present husband. We are dealing with a former husband and a present boy friend with no obligation to support. Alimony is based on the obligation to support an ex-wife and is not to be measured in the future by her chastity or moral conduct.

Under the divorce decree, the divorced wife was to receive alimony until her death or remarriage. It has not been established that either has occurred.

The judgment of the district court is affirmed.

SCHROEDER, J., dissenting: I respectfully dissent from Syllabus 3 of the court's opinion. The trial court was properly within the bounds of the record when it found no common-law marriage was established because no present marriage agreement between Irene Fleming and Elmer Schlarman was proven. It should be noted, however, Irene and Elmer have the capacity to be married, have lived together and had sexual relations. They have held themselves out to the public as husband and wife.

The public policy of this state should not require a former husband to continue alimony payments to his former wife after proving his former wife and another man are living together and holding themselves out as man and wife, although a common-law marriage has not been established.

K. S. A. 23-118 provides:

"That any persons living together as man and wife within this state without being married shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined in a sum not less than five hundred nor more than one thousand dollars, or be imprisoned in the county jail not less than thirty days nor more than three months."

This clearly expresses Kansas law and fairly states the public policy of the state. Today this public policy of Kansas is ignored by the Supreme Court of Kansas.

The trial court noted "there would be many cases in this town where alimony would terminate because the man or woman is sleeping with someone else." K. S. A. 23-118 merely precludes living together as man and wife, not "sleeping with someone else," so the violations may not be as widespread as the trial court indicates. Regardless of the number, however, violations of our law are a poor foundation on which to require Frank to subsidize Irene's indiscretions. Here Elmer and Irene have lived together as man and wife for over three years. If our courts sanction a

breakdown in the law, as the record here discloses, orderly society as we know it today may soon become a phenomenon of the past.

It must be admitted the courts of other states are split upon this subject. An Annotation at 6 A. L. R. 2d 859 (1949) and its supplements discuss a divorced wife's subsequent misconduct as authorizing or affecting modification of a decree for alimony. A leading case on this subject is *Weber v. Weber*, 153 Wis. 132, 140 N. W. 1052, 45 Lns 875 (1913) where the court stated:

". . . But it is not in consonance with the evident intent of the statute, or with the judicial policy of this state, or with principles of natural justice, to hold that the subsequent misconduct of a wife of the character here found should not be considered by a court of equity in determining how much the husband shall continue to contribute to her support. If the facts disclose a single lapse from virtue, caused perhaps in some degree by the misconduct of the husband; that he has in his possession property accumulated by the economy and labor of both during the married state; that the wife is without any means of her own and without the ability to earn a livelihood, then the court may well refuse to modify the amount of alimony awarded in the original decree. On the other hand, if the wife, without the fault of the husband and without any adequate excuse or palliation, deliberately chooses a life of shame and dishonor, has no other equitable claim upon property in the hands of the husband, and he is compelled by his daily toil to earn the money paid to her, the court may make the misconduct of the wife the ground for cutting off all alimony, or for reducing the same, as may in its discretion seem just and equitable under all the circumstances of the case. *Our statute, . . . prescribes no grounds upon which a judgment for alimony may be modified. It wisely leaves that to the judgment of the court.* The considerations that may legitimately influence such judgment are so varied and complex that legislative and judicial wisdom alike refrain from any attempt to enumerate them. *This much, however, may be said: the courts of our state do not permit vice to flaunt its banner before them unchallenged.* When it appears, its nature and extent may be inquired into, and if justice so demands, it may be made the ground of equitable relief in the allowance of alimony." (Emphasis added.) (pp. 137-138.)

See also *Taake v. Taake*, 70 Wis. 2d 115, 233 N. W. 2d 449 (1975), where the majority reaffirmed the rule that cohabitation with another man can be acknowledged as a change of circumstances affecting a former husband's responsibility to provide alimony for a former wife's support, although the court reversed that part of the trial court's order barring future alimony.

Other cases generally holding that a former wife's post-divorce immoral conduct is enough to justify a modification or termination of alimony payments include *Grant v. Grant*, 52 Cal. App. 2d 359, 126 P. 2d 130 (D. Ct. App. 1942); *Harper v. Murray*, 184 Cal. 290, 193 Pac. 576 (1920); *Coggins v. Coggins*, 289 Ky. 570, 159 S. W.

2d 4 (Ct. App. 1942); *Martens v. Martens,* 211 Minn. 369, 1 N. W. 2d 356 (1941); *Wilhelm v. Wilhelm,* 201 Minn. 462, 276 N. W. 804 (1937); *Lindbloom v. Lindbloom,* 180 Minn. 33, 230 N. W. 117 (1930); *Haritos v. Haritos,* 185 Wis. 459, 202 N. W. 181 (1925); and *Rubisoff v. Rubisoff,* 242 Miss. 225, 133 So. 2d 534 (1961). (But see *Double v. Double,* 248 Cal. App. 2d 650, 56 Cal. Rptr. 687 [1967].)

In my opinion the court is authorized under K. S. A. 60-1610 (*d*) to consider the former wife's actions in holding herself out to the public as the wife of another although a common-law marriage has not been established. K. S. A. 60-1610 (*d*) provides [formerly K. S. A. 1975 Supp. 60-1610 (*c*)]:

"The decree may award to either party an allowance for future support denominated as alimony, in such amount as the court shall find to be fair, just and equitable under all of the circumstances. The decree may make the future payments conditional or terminable under circumstances prescribed therein. The allowance may be in a lump sum or in periodic payments or on a percentage of earnings or on any other basis. *At any time, on a hearing with reasonable notice to the party affected, the court may modify the amounts or other conditions for the payment of any portion of the alimony originally awarded that have not already become due,* but no modification shall be made, without the consent of the party liable for the alimony, if it has the effect of increasing or accelerating the liability for the unpaid alimony beyond what was prescribed in the original decree." (Emphasis added.)

The court has applied this provision in reducing the original alimony decree in *Jarvis v. Jarvis,* 218 Kan. 679, 544 P. 2d 1384; *Carlton v. Carlton,* 217 Kan. 681, 538 P. 2d 727; and *Baird v. Baird,* 209 Kan. 604, 498 P. 2d 83.)

Here the appellant's motion for an order terminating alimony, filed April 1, 1975, stated in part:

". . . [E]ven should a common-law marriage not be found by the Court, the plaintiff is subverting the intent of the Court's order pending remarriage by living as the wife of Elmer Schlarman and having all of the benefits of a marriage while collecting alimony from the defendant and that such action is contrary to the public policy of this State as announced by the Supreme Court of this State."

It is clear from the foregoing that the appellant's position was presented to the trial court. But the trial court erred in its implied finding that it lacks the power to modify or terminate alimony because of the former wife's actions.

This is a case of first impression in Kansas.

To add further insult, this court has awarded appellee's counsel an additional attorney's fee in the sum of $500 for litigating this matter on appeal.

It may be argued K. S. A. 23-118 is inconsistent with the recognition of common-law marriages in Kansas. But it must be recognized that common-law marriages are valid in Kansas despite 23-118, *supra*. In *Smith v. Smith*, 161 Kan. 1, 165 P. 2d 593, the court said:

". . . While that penalty may be enforced, the fact that the parties are guilty of the offense there charged does not annul the marriage. . . ." (p. 3.)

Public policy favors marriages. (*Schuchart v. Schuchart*, 61 Kan. 597, 60 Pac. 311.) It is apparent from case law that our Supreme Court accepts common-law marriages despite possible violations of 23-118, *supra*. (See *In re Estate of Mazlo*, 211 Kan. 217, 505 P. 2d 762.)

In my opinion, there is no contradiction in holding that alimony may be terminated on grounds of public policy, under the facts and circumstances here presented, even where the public policy of this state accepts living together as man and wife for common-law marriage purposes.

Under the facts and circumstances here presented, I would affirm the trial court as to past-due installments of alimony, but would remand the case to the district court with directions to reconsider the appellant's motion in accordance with the law stated herein.

FROMME, J., joins in the foregoing dissenting opinion.