241 P.3d 175 (2010)
Anthony ANGUIANO, Deceased, Appellee,
v.
LARRY'S ELECTRICAL CONTRACTING L.L.C. and Continental Western Ins., Co., Appellees, and
Tasha Anguiano, Appellant.
No. 103,374.
Court of Appeals of Kansas.
October 22, 2010.
*176 Mark W. Works, of Works & Works, of Topeka, for appellant.
Thomas G. Lemon and Scott A. Grosskreutz, of Cavanaugh & Lemon, P.A., of Topeka, for appellees Angelica Anguiano and Anthony Anguiano, Jr.
Jerome Saskowski, of Topeka, for appellees Acario Anguiano and Antonia Anguiano.
Before MARQUARDT, P.J., McANANY and CAPLINGER, JJ.
MARQUARDT, J.
Tasha Dakota Burns appeals the decision of the Appeals Board for the Kansas Division of Workers Compensation (Board) denying her claim for workers compensation death benefits. We affirm.
On August 22, 2007, Anthony Anguiano (Tony) was working on scaffolding configured on a movable lift for Larry McCall Electrical Contractors (McCall). As another worker repositioned the scaffolding, the lift's tire *177 dipped into a drain and caused the scaffolding to tip over. Tony fell approximately 40 feet to his death.
On August 23, 2007, Tasha Burns (Tasha) filed an application for a hearing with the Kansas Division of Workers Compensation alleging she was entitled to Tony's death benefits because she was his surviving common-law spouse. Tasha listed her children with Tony, 1-year-old Acario and unborn child Antonia, as well as Tony's children from his previous marriage to Patty Anguiano, 14-year-old Angelica and 13-year-old Anthony on the application.
During her deposition testimony, Tasha explained that she met Tony in 2003 while he was separated from Patty. They began living together at a trailer park shortly after they met. Tasha signed the lease agreement at the trailer park as Tasha Burns because she considered Tony her boyfriend at the time.
After Tony's divorce from Patty in May 2004, Tony asked Tasha to marry him several times but she did not take him seriously because he had been drinking. Tony gave Tasha an engagement ring for Christmas in 2005. Tasha acknowledged that neither she nor Tony referred to the rings as wedding rings, but it was her intention to marry Tony. Tasha testified that Tony told his family he was going to marry her.
At the regular hearing, Tasha testified that she believed she and Tony were married sometime in 2005 because "he gave me a ring and I gave him a ring and he wasn't going nowhere and I wasn't going to go nowhere." After the two exchanged rings, she said that Tony repeatedly stated, "I'm going to marry this girl or this is my baby and I'm going to marry her." However, Tasha clarified that Tony never stated that the two were actually married. She explained that Tony "didn't want to get married through the church. He'd rather have just gone to the courthouse and got married, but he always told me it was just a piece of paper anyways."
Tasha acknowledged there was little, if any, formal documentation prior to Tony's death delineating a legal relationship between herself and Tony. Even though Tony and Tasha pooled their money to pay bills, they did not own a joint bank account or file joint income tax returns. Tony listed himself as "single" and listed Tasha as "Ms. Tasha Burns" on his car insurance. Further, Tasha listed herself as "single" on her income tax returns, employment information, and medical card. Moreover, Tony's death certificate listed him as divorced with no surviving spouse and listed Tasha as his companion.
On May 8, 2009, the administrative law judge (ALJ) denied Tasha's claim for death benefits under K.S.A. 44-510b because Tasha failed to satisfy the prerequisites for a common-law marriage. The ALJ reasoned that although they lived together, reared children, shared financial responsibilities, and had the intent to get married at sometime in the future, the ALJ stated; "there was no present agreement of marriage between Tony and Tasha." The ALJ ordered payments of $10,000, less amounts previously paid, to each of Tony's four children and apportioned weekly payments.
Both Tasha and her children appealed the ALJ's award to the Board. Tasha argued that the ALJ ignored uncontroverted evidence indicating she and Tony had a present agreement to be married, which was supported by (1) the Social Security Administration's determination that they were married; (2) the couple exchanged wedding rings; (3) Tasha believed they had a common-law marriage; (4) Tony publicly referred to Tasha as his wife; and (5) Victor Anguiano, Tony's father, referred to Tasha as his daughter-in-law. Tasha's children agreed with the ALJ's determination that Tasha and Tony were not common-law married but argued the ALJ erred in ordering the weekly payments to end when the total amount of the payments reached the $250,000 statutory maximum.
The Board agreed with and adopted the ALJ's factual findings and conclusions of law stating; "Tasha obviously had a loving and stable relationship with [Tony], but there was never a present agreement between them to be husband and wife. As such, there was no common law marriage and Tasha is not entitled to receive any death benefits under the Workers Compensation Act." The Board modified the ALJ's award, however, and held *178 that the under K.S.A. 44-510b(h), an employer's liability does not terminate when weekly payments reaches the $250,000 statutory maximum, but terminates when each minor child reach 18 years of age.
Tasha filed a petition for judicial review on November 13, 2009, claiming the Board ignored uncontroverted evidence and unconstitutionally infringed on her fundamental right of marriage.
The Board issued its order in this case on October 16, 2009. K.S.A.2009 Supp. 44-556(a) controls workers compensation appeals that were decided by the agency after the effective date of the amended Kansas Judicial Review Act (KJRA), K.S.A.2009 Supp. 77-601 et seq. The KJRA limits the scope of judicial review to eight specific enumerated issues listed in K.S.A.2009 Supp. 77-621(c). However, Tasha fails to identify which provision of K.S.A. 77-621(c) controls her request that the court declare her "a dependent or wife."
To establish a common-law marriage in Kansas, a plaintiff must prove (1) capacity of the parties to marry; (2) a present marriage agreement between the parties; and (3) a holding out to the public as husband and wife. Fleming v. Fleming, 221 Kan. 290, 291, 559 P.2d 329 (1977). Each element must coexist to establish a common-law marriage. 221 Kan. at 291, 559 P.2d 329. "Although the marriage agreement need not be in any particular form, it is essential there be a present mutual consent to the marriage between the parties." Driscoll v. Driscoll, 220 Kan. 225, 227, 552 P.2d 629 (1976). The burden to prove a common-law marriage rests upon the party asserting it. In re Adoption of X.J.A., 284 Kan. 853, 877, 166 P.3d 396 (2007).
Tasha claims in her brief that the Board's "application of common-law marriage is unconstitutional." Although she cites no authority that any person has a constitutional right to a common-law marriage, she claims this court must apply "strict scrutiny" when determining "whether the legislation is rational." Additionally, citing no facts or authority, Tasha claims; "When `strict scrutiny' is applied to the Court making it impossible to prove marriage, it is clear it is a violation of the requirement of equal protection. In fact, the governmental action cannot meet even a rational basis test."
It is exceedingly unclear what Tasha is arguing in her brief. However, if she is arguing the Board infringed on her constitutional right to marry because it was "almost impossible to prove common-law marriage," she did not raise this argument before the Board. Generally, constitutional issues cannot be raised for the first time on appeal. See K.S.A.2009 Supp. 77-617; State v. Ortega-Cadelan, 287 Kan. 157, 159, 194 P.3d 1195 (2008). There are three exceptions to this general rule. See 287 Kan. at 159, 194 P.3d 1195. None of these exceptions applies here. However, after an administrative proceeding, the Kansas Supreme Court has held that a constitutional issue may be raised for the first time when the case is on appeal before a court of law. Solis v. Brookover Ranch Feedyard, Inc., 268 Kan. 750, 757, 999 P.2d 921 (2000). Even though Tasha may raise a constitutional issue for the first time on appeal, we find there is no evidence to support her claim that the Board infringed on her constitutional right to marry.
Next, Tasha claims the Board did not follow K.S.A.2009 Supp. 77-621(d) because it ignored uncontroverted evidence. First, Tasha cites no authority to suggest the KJRA controls the Board's scope of review. See K.S.A. 44-556(a). Second, Tasha's own statements during her deposition contradict most, if not all, of the evidence she suggests is "uncontroverted," or the "uncontroverted" evidence is irrelevant to whether a present marriage agreement existed between her and Tony.
Tasha claims it is uncontroverted that she "holds out to the public her married name, present intent to be married, at 200 Woodward, Topeka, Kansas a public place, with their children of Anthony Anguiano deceased, and a wedding ring on her finger." However, Tasha testified that she introduces herself to others as "Tasha Burns," her driver's license lists her as "Tasha Burns," she signed her 2005, 2006, and 2007 tax returns as "Tasha Burns," and she never used the *179 name "Tasha Anguiano" in any official capacity. Further, Tasha testified that she and Tony exchanged "engagement rings" in 2005, and that at no time did any person refer to the rings as "wedding rings."
Tasha contends it is uncontroverted that Tony "publicly referred to Tasha as his wife." Tasha cites the following questioning:
"Q. Have you ever called yourself Tasha Anguiano?
"A. All the time.
"Q. Where? To whom?
"A. In front of my mother, around Tony. Tony would call me Tasha Anguiano."
The cited testimony does not indicate Tony referred to Tasha as his wife. To the contrary, Tasha testified that Tony never stated that the two were actually married but only that he was "going to marry her." Tasha claimed she believed they were going to get married, but they "didn't know Tony was going to pass away."
Regardless, under the KJRA, this court examines all relevant evidence that detracts or supports a particular finding of fact when deciding if substantial competent evidence supports the Board's ultimate determination that Tasha and Tony did not satisfy the three requirements for a common-law marriage. See K.S.A.2009 Supp. 77-621(c)(7), (d).
Here, there is considerable evidence suggesting Tony and Tasha did not have a present marital agreement. However, there is some evidence that detracts from the Board's factual findings. Although Tasha does not specifically cite this testimony, Tasha claimed Tony referred to her as his wife on several occasions to friends and family. Further, Tasha filed a "Statement of Marital Relationship" with the Social Security Administration in which Tony's father claimed Tasha and Tony "lived together like husband [and] wife" and heard Tasha and Tony refer to each other as husband and wife. Additionally, in the "Statement of Marital Relationship," Jessi Burns, Tasha's brother, noted that he considered Tasha and Tony to be husband and wife because they "made bab[ies]" and Tony "[t]ook real good care of" Tasha. Jessi also claimed that Tasha and Tony referred to each other as husband and wife on the "[f]ront porch, [b]ack porch, in the house, everywhere, all the tim[e]."
We find that there is substantial evidence to support the Board's finding that Tasha failed to establish a present marriage agreement with Tony. Therefore, the Board did not err in denying Tasha death benefits under K.S.A. 44-510b because she was not a surviving spouse.
Affirmed.