NOT DESIGNATED FOR PUBLICATION

No. 128,485

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BRANDON ROBERTO DURAN,
*Appellant*,

v.

JESSICA RENEE CHRISTENA,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; LINDA D. KIRBY, judge. Submitted without oral argument. Opinion filed February 27, 2026. Affirmed.

*Vincent J. Garcia*, of Garcia Law Office, of Wichita, for appellant.

*Jennifer M. Hill*, of McDonald Tinker PA, of Wichita, for appellee.

Before BRUNS, P.J., HILL and ATCHESON, JJ.

PER CURIAM: Brandon Roberto Duran sued Jessica Renee Christena for a divorce, claiming that by virtue of Kansas common law they were married. Despite having a child together, Christena denied that she ever wanted to be married to Duran and that they were not married. The trial court ruled there was no common-law marriage. We agree and affirm.

1

*Kansas recognizes common-law marriages.*

For more than a century Kansas courts have recognized common-law marriages. See *Moore v. Nah-con-be*, 72 Kan. 169, 173, 83 P. 400 (1905). A common-law marriage "establishes a legally cognizable status that does not depend on religious or civil ceremony for its validity but is created by the consent of the parties." *In re Common-Law Marriage of Heidkamp and Ritter*, 317 Kan. 125, 128, 526 P.3d 669 (2023).

But even though there is no formal ceremony that creates a common-law marriage, the parties to that marriage cannot legally dissolve that marriage just by informally parting and going their separate ways. Such marriages are only dissolved by law—in other words, only by divorce. "If a common-law marriage posture is assumed, a subsequent intent to no longer be married, in and of itself, does not nullify that posture." *State v. Johnson*, 216 Kan. 445, 449, 532 P.2d 1325 (1975). "The burden to prove a common-law marriage rests upon the party asserting it." *Anguiano v. Larry's Electrical Contracting*, 44 Kan. App. 2d 811, 814, 241 P.3d 175 (2010). This means that Duran had to prove to the court that they were married; Christena did not have to prove they were not married.

Caselaw teaches that there are three essential elements of a common-law marriage. First, the parties must have the capacity to marry—no underage common-law marriages are legally recognized. If you are already married, you must divorce first before you have the capacity to have a common-law marriage. Second, an agreement that they are married must exist between the parties. This is perhaps the most important of the three requirements because it is the couple's mutual consent that creates the marriage. Two become one. The law will not recognize such a marriage unless both parties want to be married. Finally, the parties must hold each other out "as husband and wife to the public." See *In re Common-Law Marriage of Heidkamp and Ritter*, 317 Kan. at 127-28. To

2

establish a common-law marriage, each element must coexist. *Fleming v. Fleming*, 221 Kan. 290, 291, 559 P.2d 329 (1977).

*The court heard evidence via Zoom to determine whether the parties were common-law married.*

### *Duran's side of the story*

Duran's case centered on his belief that he and Christena were married because they had a child, lived together off and on for many years, bought property together, and signed several documents saying they were common-law married.

Duran testified that the parties were common-law married in 1996 when Christena moved in with his parents after she became pregnant with Duran's child. Christena was 17, and Duran was 16. He testified that together they later purchased a house on Emporia Street in Wichita.

Following up, Duran then submitted several suggestions on how they held themselves out as a married couple. He testified that both parties signed an affidavit of common-law marriage on December 11, 2014, so Christena could add Duran to her health insurance, and Christena filled out and submitted the affidavit. Next, he testified that he shared a vehicle insurance policy through State Farm Insurance with Christena in 2020. That policy listed Duran as "a married male." Similarly, Christena had added Duran to a family membership to the YMCA. She removed him later from the family membership in 2022. The parties had signed a common-law marriage form when they applied for financial assistance for the YMCA membership.

Along the same line, Duran also submitted their tax filings from 2016 to 2021, showing that they had filed their tax returns as "married filing jointly." He asserted the parties comingled funds, and his portion of the tax refund went to Christena's account.

3

Although Christena paid the bills, Duran "stayed at home and cleaned and cooked, and when my grandson was born I took care of my grandson."

After that, Duran testified that he referred to Christena's parents as his mother-in-law and father-in-law as proof that he considered himself married to Christena. He suggested Christena referred to his parents as mother-in-law and father-in-law as well. When Duran's mother had to have surgery, Christena specially requested the surgeon. Duran claimed that the parties had exchanged wedding rings.

Under cross-questioning, Duran admitted that the two first filed "married filing jointly" income tax returns in 2013 despite contending they were married in 1996. Duran also admitted that he had not lived with Christena during their entire relationship. In 2013, he signed a quitclaim deed to their Emporia Street house as a single person. The original deed, filed in 1999, identified both Duran and Christena as single persons. Duran also admitted that his name was on a deed, which was recorded in 2021, for a house where he currently lived with a different girlfriend and her children.

Duran then called four long-time friends who all testified that they always thought that Duran and Christena were married.

*Christena's side of the story*

Christena began her testimony forcefully. Because of strife at home and her parents' violent divorce, Christena, pregnant with Duran's child, did move in with Duran's family but asserted that she never wanted to marry him. After the birth of their son, she finished school, became a nurse, and currently works as a nurse in the cardiac intensive care unit at a local hospital.

4

Christena asserted that she had never married Duran in a ceremonial marriage and has never considered herself common-law married at any point. Duran had asked her to marry him, but she testified her response was, "Emphatically no. I told him I would never marry him, that he had proved to be super unreliable and that I would never marry him." This occurred in 2009, 2010, or possibly later. She explained that she would never marry him but had tried "so hard to help him." She testified that neither party was 18 years old in 1996—she was 17, he was 16—when Duran claimed they had entered into a common-law marriage.

Christena acknowledged she had signed the affidavit of common-law marriage in December 2014 but explained that she did not intend to be married to him and was just "trying to get his health the best it could be." At the time, Duran had begun working on his GED and the parties were getting along, so she had added him to her health insurance.

Christena also acknowledged that she filed joint tax returns with Duran after 2014. But she did so because she "needed every penny to put into the household to take care of everyone." During the time Duran alleged they were common-law married, Christena also filed tax returns as an individual. Christena claimed that the parties never had joint bank accounts but, at one point, Duran had transferred considerable money to her in order to secure legal counsel for their son who had been arrested in Colorado.

Christena admitted that she and Duran had signed various documents as married, but she did so to help him. She jointly filed income tax returns to benefit the household because Duran had refused to work. Christena asserted she only signed the affidavit to help Duran. And she reiterated that the car insurance policy was a "household driver policy" not a "family" policy. She acknowledged that she may have referred to Duran's mother as her mother-in-law. She acknowledged that she referred to Duran's nieces and nephews as her own. But she explained that how she referred to them had "nothing to do"

with the legal relationship. She adamantly denied ever purchasing a ring for Duran or that she had ever worn a ring from Duran.

Christena's mother testified that she did not believe the parties were married. She said that Christena never referred to Duran as her husband, instead referring to him by his name, as "baby daddy," or "partner." She believed the two were "kind of more like roommates, . . . coparenting out of the same home."

Christena called other witnesses who opined that she and Duran were not married.

*The district court was not convinced by Duran and held there was no common-law marriage.*

In its ruling, the court found that Duran had failed to carry his burden to show the parties were married at common law. Specifically, the district court first found that the parties did not have the capacity to marry in 1996 because they were both minors. Then, the district court found that, even though Duran had presented evidence that the parties had held themselves out as married, the purpose of holding themselves out as married was to gain a benefit from third parties. The secondary gain was health insurance, YMCA membership, or a reduction of their income tax liability. In other words, the holding out was for the secondary gain and not a demonstration of their relationship. These documents were not proof of a marriage contract, nor were they evidence of a mutual agreement of the parties to be common-law married.

The district court concluded that this evidence of "holding out" was insufficient to prove a present agreement to be married because Christena's uncontroverted testimony showed that the "holding out" was intended only to gain a financial benefit from third parties. The court concluded that because Duran had not carried his burden to show a mutual present agreement to be married, there was no common-law marriage.

6

The district court then ordered Duran to pay Christena one-half of her attorney fees under K.S.A. 23-2715—as a matter of equity and not as a sanction. It found Christena incurred substantial unnecessary attorney fees because Duran had proposed conflicting dates for the start of the common-law marriage.

*Duran raises three issues in this appeal.*

In his first issue, Duran claims the district court erred by improperly interpreting or failing to properly weigh the affidavit of common-law marriage and the other written documents signed by the parties stating they were married when it concluded the parties were not married by common law.

Next, because the court failed to state on the record any findings about why Duran's actions were not reasonable under the circumstances, the court erred when it ordered him to pay half of Christena's attorney fees under K.S.A. 60-211, the statute Christena cited to in her motion.

Finally, Duran claims an abuse of discretion error amounting to a violation of due process when the court refused to redo the hearing because no electronic recording was made of the court's ruling when it was announced on the Zoom call.

*Duran failed to prove there was a common-law marriage.*

Duran claims the trial court erred by disregarding the two affidavits of common-law marriage signed by the parties in 2014 and 2011. To Duran, they are written proof of the marriage contract. Christena contends signing the affidavits was merely to obtain insurance coverage and a gym membership. The trial court concluded their execution was an attempt to gain something and not a marriage contract.

7

Here, there is a finding by the court that there is no common-law marriage—a negative finding. A negative finding occurs when a district court finds that a party has failed to meet its burden of proof. Appellate courts reviewing a negative finding will uphold it unless the challenging party proves the district court arbitrarily disregarded undisputed evidence or relied upon "'some extrinsic consideration such as bias, passion, or prejudice'" to reach its decision. *State v. Douglas*, 309 Kan. 1000, 1002-03, 441 P.3d 1050 (2019).

Duran relies on two affidavits of common-law marriage—one sent to Christena's employer in order to obtain health insurance for Duran, and the other sent to the YMCA to add Duran to Christena's family gym membership. Duran asserts that the affidavit of common-law marriage "in and of itself satisfies the question of common law [marriage] similar to a certificate of marriage and it satisfies all three elements for common-law marriage." He also suggests that the affidavit is a notarized contract. It is not.

K.S.A. 23-2504(a) requires parties who wish to be joined in marriage to declare their intention to be married before an authorized officiant "and in the presence of at least two competent witnesses over 18 years of age." These two affidavits do not meet these requirements. Thus, they do not create a marriage contract. Instead, the affidavits are simply evidence that would support a finding of a common-law marriage.

*There is no present agreement to be married here.*

The second element of the three that must be proved when establishing a legal common-law marriage is a present agreement. A present agreement to marry "need not be in any particular form," but both parties must have "a present mutual consent to the marriage . . . ." *Driscoll v. Driscoll*, 220 Kan. 225, 227, 552 P.2d 629 (1976). A present agreement to be married may "'be evidenced by acts and conduct from which its making

8

ore tenus may be presumed.'" *Cain v. Cain*, 160 Kan. 672, 676, 165 P.2d 221 (1946). In other words, the marriage agreement is displayed by the words and conduct of the parties.

Several cases show how this analysis of words and conduct works. In *Schrader v. Schrader*, 207 Kan. 349, 484 P.2d 1007 (1971), the parties were married in 1960 and divorced in 1966. After that the parties began living together. A few years later, the wife filed a second divorce action. The husband cross-petitioned for divorce. After trial, the district court found that no common-law marriage had been established when the parties began living together after their first divorce. The trial court found:  "'Although the parties cohabited, made joint income tax returns and generally acted as man and wife from November, 1966 to September, 1968 there was never a present agreement or understanding that they were married.'" 207 Kan. at 351. The actions did not show an agreement, just a holding out as being married.

On appeal, the Kansas Supreme Court noted:

> "It is true there was evidence the parties did live together, held themselves out as man and wife, filed joint income returns, bought personal property as man and wife, and registered themselves in hotels in that capacity. This evidence was admissible as tending to establish a common-law relationship between the Schraders, and, standing alone, these circumstances might well have sufficed to warrant an inference that a consensual marriage had indeed been consummated." 207 Kan. at 351.

That said, both parties had also testified that they did not believe themselves to be married. As a result, the *Schrader* court concluded there was no present agreement to be married and, therefore, no common-law marriage existed. 207 Kan. at 352.

A similar result occurred in *Eaton v. Johnston*, 235 Kan. 323, 325, 681 P.2d 606 (1984). There, the parties were married in 1957 and divorced in 1977. But the parties began living together shortly thereafter, jointly acquired a house, and incorporated a

9

business. In 1981, the alleged wife moved for an adjudication that there was no common-law marriage between the parties. The purported husband alleged there was a common-law marriage and requested a divorce. The trial court determined no common-law marriage existed because "there was insufficient evidence to support a finding" that there was a present agreement to be married or that the parties held themselves out as married following their divorce. 235 Kan. at 325. The husband appealed, and another panel of our court affirmed the "nonexistence of a common law marriage" but remanded the case for further proceedings regarding property division. 235 Kan. at 323; *Eaton v. Johnston*, 9 Kan. App. 2d 63, 65, 672 P.2d 10 (1983). The wife then filed a petition for review.

Despite conflicting evidence, our Supreme Court adopted the Court of Appeals' rationale, finding: "Plaintiff consistently denied a marriage agreement with defendant, and denied holding defendant out as her husband after their divorce on August 3, 1977. These denials suffice to support a negative finding against the one having the burden of proof." 235 Kan. at 325.

Then, in *Sullivan v. Sullivan*, 196 Kan. 705, 710, 413 P.2d 988 (1966), the Supreme Court affirmed a district court's finding that there was no common-law marriage. In doing so, the court noted:

> "In reviewing the entire record, we concede there was evidence from which the court could have found that the parties intended a present marriage agreement; however, the evidence was conflicting, and the trial court, in its advantageous position as the trier of the facts, resolved the conflict against the plaintiff. We hold that the court's finding [that neither party believed they had assumed a marriage relationship when they started living together] was supported by substantial, competent evidence and cannot be disturbed on appeal." 196 Kan. at 710.

These cases show that both parties must agree to such a marriage for it to be valid. Can that be said here? We think not.

Here, the district court found that Duran "has not carried his burden to show by evidence or testimony either a point in time at which the parties had a joint and mutual agreement to be common law married, or that such a mutual agreement existed." As a result, the district court found the parties were not married at common law.

As in *Sullivan*, *Schrader*, and *Eaton*, there is conflicting evidence on this issue, but substantial competent evidence supports the district court's finding. We agree with the district court—there is insufficient evidence of a present agreement to marry that would lead us to find that a common-law marriage exists here. The two remained two, not one.

*We deem Duran's second issue abandoned.*

Christena requested attorney fees under K.S.A. 60-211. She asserted Duran filed his petition for an improper purpose because it was clear there was no common-law marriage between the parties. The district court found that Duran "provided no credible evidence" that the parties had a mutual agreement to be common-law married and that Duran "proposed conflicting dates on which he alleged the common law marriage came into existence, thus causing [Christena] to incur substantial unnecessary attorney fees." It ordered Duran to pay half of the attorney fees Christena incurred in defending the claim. In its order denying Duran's motion to reconsider attorney fees, the district court clarified that it ordered attorney fees under K.S.A. 23-2715, as a matter of equity, not as a K.S.A. 60-211 sanction.

Duran focuses his argument only on the propriety of the fees award under K.S.A. 60-211. A point raised incidentally in a brief but not argued therein is deemed waived or abandoned. *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017). Duran does not argue the district court's award under K.S.A. 23-2715 was based on an error of law or an error of fact. Nor does Duran argue that the district court's decision was arbitrary,

11

fanciful, or unreasonable. Since Duran raises no argument under K.S.A. 23-2715, we hold that Duran has abandoned this argument.

*We find no due process error in not ordering a redo of a hearing.*

All of the parties' presentation of evidence and arguments were recorded by Zoom, but the district court's findings and rulings as announced from the bench were not.

In his motion to alter or amend judgment, Duran asked the district court to "make a record with attorney[s] present with appropriate time to respond" and asserted that the failure to do so would be an abuse of discretion. He requested "appropriate time to place objections on the record for appeal purposes." Duran also requested that the district court reconsider its award of attorney fees, arguing it is "an abuse of discretion to award attorney fees on the specific issue of common-law marriage of the parties." He asked the court to identify which portion of K.S.A. 60-211 the district court relied on when it awarded attorney fees.

The district court denied the motion to alter or amend judgment. In doing so, the district court explained that "the entirety of the trial is recorded except the court's ruling from the bench." The district court prepared a draft memorandum from its notes and sent the draft to the attorneys the following workday. The district court noted that Duran's counsel "stated his agreement that that draft was what the court had ordered, with exceptions," and that it had amended its memorandum based on Duran's counsel's exceptions. The district court noted: "At the time of the court's ruling from the bench, the presentation of testimony, evidence, and arguments was completed. All appropriate objections to proceedings, witnesses, and evidence were made at trial or were waived by parties' silence."

To us, Duran contends that the district court erred when it denied his request to "redo the hearing and allow the parties to be present." He insists that "due process required a notice and a hearing before an impartial tribunal with an opportunity for confrontation and that the court's decision *must be made based on the record*." (Emphasis added.) He contends that the district court erred by issuing a written ruling "in an attempt to restate [the judge's] previous ruling that was accidentally not recorded." We are unpersuaded.

Duran cites no authority suggesting that issuing a written ruling after discovering the judge's rulings from the bench were not recorded was erroneous. Failure to support a point with pertinent authority or failure to show why a point is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018).

There is no indication in this record that the district court did not base its ruling on the record. In fact, in denying Duran's motion to alter or amend judgment, the district court stated: "It is important to note that the entirety of the trial is recorded except the court's ruling from the bench. The court prepared a draft of the Memorandum from the court's notes and provide[d] that draft to counsel on the next workday." Further, Duran's counsel acknowledged the Memorandum was accurate with two exceptions and stated: "'Obviously, I disagree with the holding and the portrayal of my client's testimony within the holding *but it is accurate as to what you stated*.'" (Emphasis added.) The district court modified its Memorandum and accepted Duran's edits before filing. The district court based its ruling on the record, even if there is no transcript of the district court's findings of fact and conclusions of law as stated from the bench.

We do not see how this situation differs from when a district court takes a matter under advisement and then later issues a written ruling. Indeed, "[i]n a civil action, a district court's journal entry of judgment controls over a prior oral pronouncement from

13

the bench." *Steed v. McPherson Area Solid Waste Utility*, 43 Kan. App. 2d 75, 87, 221 P.3d 1157 (2010); see K.S.A. 2024 Supp. 60-258. Even though the district court's oral pronouncement here was not recorded, the journal entry of judgment would have controlled anyway.

*We deny appellate attorney fees.*

Christena asks us to award attorney fees to her for having to once again defend against Duran's claims that they were married according to common law. Although she has prevailed in this appeal and we agree with the district court that Duran has failed to prove a common-law marriage between the two, we are not convinced to grant Christena's attorney fees for this appeal. Duran raised legitimate arguments in this appeal, but they were not persuasive. We deny that motion.

Affirmed.